UNITED STATES, Appellee

v

RUSSELL W. JONES, Airman Third Class,
U. S. Air Force, Appellant

7 USCMA 83, 21 CMR 209

No. 7794

Decided May 25, 1956

*Captain George M. Wilson* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel Stanley S. Butt* and *Captain Frank Fedele.*

*Major John M. Rankin* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Emanuel Lewis.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused was convicted by special court-martial of willful disobedience of a lawful order of a superior noncommissioned officer, in violation of Article 91 of the Uniform Code of Military Justice, 50 USC § 685; of failure to repair to the appointed place of duty at the prescribed time, in violation of Article 86, Uniform Code of Military Justice, 50 USC § 680, and of willful damage to a Government vehicle, in violation of Article 108, Uniform Code of Military Justice, 50 USC § 702. He was sentenced to a bad-conduct discharge, forfeiture of $65.00 per month for four months, and confinement at hard labor for four months. The convening authority approved only negligent damage to a Government vehicle and failure to obey, violations of Articles 108 and 92, respectively, Uniform Code of Military Justice. The board of review affirmed. The following questions were certified by The Judge Advocate General of the Air Force:

"a. As a matter of law, is mistake of fact available to an accused in defense of a Specification alleging an offense of disobedience of orders, as set out in the Specification of Charge I herein?

"b. In the event the first issue is answered affirmatively, did the Board of Review err in holding under the facts of this case that the defense of mistake of fact was not in issue and that, accordingly, the president was not required to instruct thereon sua sponte?"

The accused airman, a motor pool driver at Foster Air Force Base, Victoria, Texas, was dispatched to drive Airman First Class Varrone to an off-base facility, located at Seadrift, Texas. The purpose of the trip was to enable Varrone to assist in an inventory. At Seadrift Varrone embarked upon his duties, and afterward suggested lunch to the accused. The latter refused, and added that he must instead return with the vehicle to the Victoria base. Varrone insisted that the accused wait until he had finished lunch, pointing out that the vehicle had been dispatched for use of personnel employed in taking the inventory. Master Sergeant Irby, also engaged in the inventory, was drawn into the discussion and ordered the accused to delay his departure until Varrone had eaten. Despite Sergeant Irby's order, the accused got into the vehicle and "took off." Upon his arrival back at the Victoria base, according to Motor Pool Supervisor, Sergeant Fillion, the accused stated "he had gotten into it with a Master Sergeant at Seadrift."

The accused, testifying in his own behalf at the trial, denied receiving an order from Sergeant Irby not to return to the Victoria base. "He talked to Varrone and looked at me. If he gave me an order I can't say. Whether he gave me an order or not I don't

84

know." The petitioner testified that he did not wait for his passenger because he believed that he lacked authority to retain the vehicle beyond the time indicated on his trip ticket. This alleged lack of authority was predicated upon what he believed was a standing operating procedure in his organization. This procedure required that all vehicles be returned to the motor pool within fifteen minutes after expiration of the time shown on the driver's trip ticket, unless the passenger obtained an extension from the motor pool.

The first question certified inquires whether a mistake of fact is available as a defense against "an offense of disobedience of orders" but adds "as set out in the Specification of Charge I." The specification set out in Charge I alleges willful disobedience and the appellant was convicted as charged. However, the convening authority approved only the lesser offense of a failure to obey. As a result of the convening authority's action, we are not now concerned with willful disobedience.

When we direct our attention to a consideration of whether or not mistake was reasonably raised by the evidence, we are compelled to conclude that it was not. At his trial the accused flatly denied ever having received an order from Sergeant Irby. The Sergeant, on the other hand, testified that he twice ordered the accused not to return to the Victoria base. After the first order the accused gave no acknowledgment and acted "like he didn't want to comply." Thereafter, the sergeant walked toward the accused, and this time repeated the order "a little rough . . . I said it in a meaning manner . . . As an order . . . . I told him, 'you will definitely wait until Airman Varrone eats and I mean it.' Those are the very words I said." There can be no question but what the accused heard and understood the order. He told his motor pool supervisor, Sergeant Fillion, upon his return to the motor pool, that Fillion could expect a report on him for the reason that "he had gotten into it with a Master Sergeant at Seadrift." Nor can it be argued that the order was

illegal. Airman First Class Varrone had not finished the inventory by lunchtime. Under the circumstances, the order was quite sensible and reasonable since it would save a needless trip back from the Victoria base to pick up the personnel taking the inventory. Airman Varrone testified:

". . . I finished all the typing and paper work about two hours after we got there, and then it was about time for chow, and Airman Jones went out to the truck and said he was going back to the base. I went out and said that he should stay and eat that I had just about finished up the work. He said he was going back to the dispatch office, that the truck was given to Special Services to come down and take inventory and he was going back. I told him that the truck was dispatched out to Special Services and when I got through we could go back. He said no, he was going back, either with or without me. About that time Sgt. Irby heard the conversation and he told us to come in and eat, and Airman Jones didn't want to come in, so Sgt. Irby told me to come on in and eat and he told Airman Jones to stay until I had finished eating and the inventory, and then we could go back to the base. I went in to eat, sat down and the truck started up and he took off. Sgt. Irby called the Provost Marshall [sic] and reported it."

The facts in this case fall within the decision in United States v Archibald, 5 USCMA 578, 18 CMR 202, where we said, "The case presented by the defense is so contradictory and actually incriminatory as to preclude any finding except that of guilty . . . Taken as a whole the defense evidence of mistake patently falls far short of the reasonableness required to raise an issue of fact."

The instructions of the president were correct. The decision of the board of review is affirmed.

LATIMER, Judge (concurring in the result):

I concur in the result.

I find it necessary to pen a separate

opinion in the case for two reasons: First, because the majority opinion fails to respond to the first certified issue, and second, while phrased in an ambiguous manner, the question can be interpreted to request our opinion on the effect of a mistake of fact in cases involving either a specific or general criminal intent. I reach that conclusion because the specification originally alleged willful disobedience, but now, because of the action of the convening authority, presents the included offense of failure to obey.

The perplexity occasioned by this case may spring from the fact that in our opinions we have differentiated on an individual basis between offenses where an accused must defend on a mistake or ignorance of fact which is both honest and reasonable, and those crimes where his defense may be predicated on an honest mistake alone.

There seems to be little difficulty in applying the appropriate test for offenses founded on specific intent. For instance, in United States v Rowan, 4 USCMA 430, 16 CMR 4, we considered a conviction of larceny by check. The issue therein involved was whether or not an instruction which required the mistake to be both honest and reasonable was erroneous. In view of the fact that we were dealing with an offense which involved a specific intent to deprive an owner permanently of his property, we held that an instruction which required both conditions placed an undue burden on the accused.

In our earlier decisions, ignorance or mistake of fact has been held to constitute a defense in general intent cases only in instances involving the possession or use of habit-forming drugs or marihuana, and then the issue has been principally whether that defense negated knowledge of the presence of the drug. United States v Hughes, 5 USCMA 374, 17 CMR 374; United States v Reese, 5 USCMA 560, 18 CMR 184; United States v Greenwood, 6 USCMA 209, 19 CMR 335; United States v Grier, 6 USCMA 218, 19 CMR 344.

In United States v Perruccio,

4 USCMA 28, 15 CMR 28, we were confronted with a case involving negligent homicide. In that instance, a general intent offense only was involved. There we reasoned that, before a mistake could be a defense, it must be both honest and reasonable. One of the elements of that offense was negligence, and obviously the accused could not escape a finding of guilty by a showing that he acted without due care.

A somewhat similar problem was presented to us in United States v McCluskey, 6 USCMA 545, 20 CMR 261. In that instance, we held that, where the offense charged was bigamy, accused's mistake of fact must be both honest and reasonable to constitute a defense. Federal law is to the same effect. Alexander v United States, 136 F2d 783 (CA DC Cir) (1943).

While in United States v Mardis, 6 USCMA 624, 20 CMR 340, the writer did not have the concurrence of the Chief Judge, I concluded that only an honest and reasonable mistake of fact would serve as a defense to a charge of keeping a disorderly house. Once again, Federal law is in agreement with this. De Forest v United States, 11 App DC 458 (1897).

Turning to fields not yet explored by this Court, other Federal courts are far from adopting a general rule that honest mistake or ignorance of fact will serve as a defense to crimes involving only a general criminal intent. In Stone v United States, 113 F2d 70 (CA6th Cir) (1940), it was held:

"Where guilty knowledge is an element in the offense, as in conspiracy charges and the use of the mails to defraud, the knowledge must be found from the evidence beyond a reasonable doubt, but actual knowledge is not required; it may be inferred. Scienter may be inferred where the lack of knowledge consists of ignorance of facts which any ordinary person under similar circumstances should have known. Ignorance of inculpatory facts is no more a defense than ignorance of inculpatory law. There is evidence that each of the appellants knew, or could have known by the exercise of rea-

sonable diligence, that the statements made to prospective purchasers concerning the value of the stocks of the respective corporations were false."

In Townsend v United States, 95 F2d 352, 358 (CA DC Cir) (1938), it was said, in connection with a charge of willful default after having been summoned as a witness by the authority of Congress, that, "Justification may also be based upon a mistake of fact by the defendant, where his mistake is a reasonable one and where the fact—if it were as he believed it to be—would have constituted justification."

In United States v Pinkston, 6 USCMA 700, 21 CMR 22, we held that failure to obey may be based on heedlessness or simple negligence, and it would therefore follow, from what I have outlined above, that mistake of fact must be both honest and reasonable to be a defense to this charge. Although I suppose it could be argued that mistake of fact can never be a defense to the crime of failure to obey, the contention is without discernible merit, as I do not believe it is an insurer type of offense, providing for strict liability without fault, United States v Pinkston, supra.

As to the second certified question, I agree that no issue was raised as to an honest and reasonable mistake of fact. First of all, it is at least doubtful that the accused asserted any such defense. According to his sworn testimony, he did not even hear the giving of any order, and thus claimed an ignorance of fact, if anything. Assuming that the certified issue refers to a claim of ignorance as well as mistake—and the same rules would apply in this case—I cannot view this claim as reasonable under the circumstances. The order was given in a loud tone of voice at a time when the sergeant was within twenty feet of the accused. They were facing each other, and the order was plainly audible to others who were nearby. In addition, the accused tacitly admitted that he had heard the order, for after he returned to the base, he informed his supervisor that he had gotten embroiled with a master sergeant at the Seadrift facility.

Assuming the certified issue refers to the testimony by the accused to the effect that he had been instructed to wait no more than fifteen minutes beyond the time shown on the trip ticket before returning to the motor pool, I cannot view the testimony as raising an issue of honest and reasonable mistake. Sergeant Fillion testified that his instructions concerning off-base runs required the driver to remain with the person requesting the vehicle until such time as that person's business was completed, before returning to the motor pool. Sergeant Fillion also testified that on on-base runs, the drivers were to wait fifteen minutes after the requested time had run out and then return to the motor pool. The accused, by his own admission, had been operating under these instructions for over six months, and his normal assigned duty was as a truck driver in daily operations. Under these circumstances, I cannot view his mistake as reasonable. Furthermore, in the absence of any instructions at all, any one with wit enough to serve as a truck driver in normal operations should know better than to go off and leave his passenger—whose work had not been completed—isolated at a facility located thirty miles from the main base with no other transportation available to him.

Judge FERGUSON did not participate in the decision in this case.