UNITED STATES, Appellee

v

CARDELL SMITH, Private E-2, U. S. Army, Appellant

9 USCMA 317, 26 CMR 97

![redacted]

No. 10,977

Decided June 6, 1958

![redacted]

*First Lieutenant Herbert R. Brown* argued the cause for Appellant, Accused. With him on the brief were *Colonel Edward M. O'Connell* and *Captain Arnold I. Melnick.*

*First Lieutenant Avram G. Hammer* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel John G. Lee, First Lieutenant Chester F. Relyea,* and *First Lieutenant William H. Keniry.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was charged with three offenses involving the wrongful appropriation of privately-owned motor vehicles, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. He was convicted of only two of the offenses and sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for one year. Intermediate appellate authorities affirmed, and review was granted to consider the following question: Did the evidence compel the law officer to submit an instruction to the court accentuating the principle that the accused was not guilty of unlawful appropriation if he merely accepted a ride in an automobile, knowing it to be stolen?

The Government first presented the testimony of three owners of automobiles to the effect that on the particular date alleged the respective vehicles had been moved from their parking places without the owners' consent. The accused's pretrial statement was then received in evidence. Summarizing his version of the takings as reflected in that document, we find that he admitted participation to the following extent. He and two other soldiers stationed at Fort Ord, California, had discussed the possibility of leaving camp by car for San Francisco. One of them, a Private Pimlott, who apparently was an expert in shunting an electric circuit around an automobile ignition switch, stated they could travel in his car. The accused accompanied his two companions from the barracks to a post parking lot. There he observed Pimlott complete the electrical circuit of a two-door Chevrolet coupe by using a piece of tinfoil. The car would not start, so the accused and the third member of the party pushed the vehicle while Pimlott attempted to make his expedient work satisfactorily. Not being successful in starting this automobile, the three proceeded to another parking lot on the post. There Pimlott "hot-wired" a second automobile, which was either a 1949 or 1950 Ford. This time the elec-

**318**

tric circuit was completed, and the three started on their journey. During the early part of the trip, the accused took his turn at driving. At Gilroy, California, the car ran out of gas and was abandoned. After leaving this vehicle, the three companions discussed stealing a car to return to Fort Ord. It was agreed that if hitchhiking was not successful, a car would be obtained. The travelers started walking toward the south part of Gilroy, where Pimlott left the other two, only to return shortly in another vehicle which the accused knew had been stolen. The car was driven to Salinas, California, where accused stopped to talk with some friends. The other two members of the threesome, while cruising around, were arrested by town police.

Accused refuted substantially all of his pretrial statement when he became a witness in his own behalf. According to his in-court testimony, he was led to believe Pimlott was the owner of the first car, and he was ignorant of any lack of authority on Pimlott's part to use the second car until the group arrived in Gilroy. At that time, he noticed the tinfoil being removed, and he learned the car had been taken without the owner's permission. He was without funds, and he had to be back on post by midnight. Accordingly, he accepted the ride in the stolen vehicle because he did not want to be absent without leave.

The court-martial found accused not guilty of the unlawful appropriation of the first automobile but guilty of depriving the owners temporarily of the other two vehicles. The issue, therefore, arises only in connection with the last two misappropriations.

If the accused's pretrial statement is considered as setting forth the true facts, he was a co-actor in the last two offenses. If that version of the journey be rejected and his testimony from the witness stand is accepted, he raised an issue of honest ignorance of fact insofar as the second automobile is concerned. However, he has no cause to complain of the instructions on that score, for the court members were advised that if they believed the accused accepted a ride honestly believing the car was being used with the owner's consent, they could not find him guilty of that offense. That instruction covers the accused's theory, for it was his contention he was never aware of the fact that the car was misappropriated until it was abandoned. Furthermore, he claims his discovery of the true facts and the exhaustion of the automobile's fuel supply occurred simultaneously. If, as he testified, he knew nothing of the alleged unlawful taking until that time, an instruction concerning his riding in a car knowing it to be stolen was inappropriate—during that trip he just could not have been a passenger riding in a car which he knew was stolen. Therefore, regardless of whether the pretrial statement or the sworn testimony be accepted as reflecting the truth, there was no issue involving the second stolen vehicle which was not covered by instructions.

With respect to the failure to instruct properly on the misappropriation of the third automobile, a slightly different question is posed. In connection with that offense, accused concedes he knew it was taken without the owner's consent. He, however, contends he was a passive rider. In the light of this entire venture, there is little, if any, merit to that contention, but we will assume arguendo that accused's testimony raises that issue. That places the evidence on that transaction in the following posture. The Government introduced evidence which would permit the court-martial to find that when the first car would not start, the three sojourners went to a second vehicle. Accused was aware of the fact that Pimlott had not consulted with anyone between the failure of the first vehicle to start and the misappropriation of the second. The accused knew expedients were being used to get the first two cars started, and he embarked on a journey without any funds to share expenses incidental to the trip. He had a round trip to make in a short time, for he asserts it was in the afternoon when the plan originated and he was required to be back on the post by midnight. On his

return journey, however, he left the vehicle to remain in Salinas. When the second car was abandoned, he discussed stealing the third car.

The foregoing evidence is ample to prove the Government's theory that accused actively participated in a single venture which involved traveling in unlawfully appropriated vehicles. The accused contradicted this evidence by testifying that his participation was in ignorance of any unlawful takings until a short time before he became a passenger in the third car. Therefore, to instruct properly, the law officer was required to charge the court-martial members in such a manner that their findings would pass directly on accused's theory. We believe the law officer met that requirement, as the following instruction demonstrates:

"You are further advised that any person who commits an offense is a principal. Likewise, any person who aids or abets the commission of an offense is also a principal and equally guilty of the offense. To constitute one an aider or abettor, and hence liable as a principal, he must share the criminal intent or purpose of the active perpetrator of the crime and must by his presence aid, encourage, or excite the active perpetrator to commit it. Mere presence at the scene of the crime is not enough. The proof must show that the aider or abettor did in some way associate himself with the venture, that he participated in it as something that he wished to bring about, and that he sought by his actions to make it successful. If there is a concert of purpose to do a given act and such act is done by one of the parties, all probable results that could be expected from the act are chargeable to all parties concerned; but in order to make one liable as a principal in such a case, the offense committed must be embraced by the common venture or must be an offense likely to result as a natural and probable consequence of the offense directly intended.

"Consequently, if you are satisfied by legal and competent evidence beyond a reasonable doubt that Private Smith aided and abetted or abetted the commission of the offenses charged in the specifications you should find him guilty even though he was not the active perpetrator of the offenses."

If the court members believed accused's trial testimony, they could not, within the framework of this instruction, find him guilty. He did not personally take the third car and so, in order to return the finding it did, the court-martial had to find beyond a reasonable doubt that he had associated himself with the venture; that he participated in it by words of encouragement as something he wished to bring about; and that he shared in the criminal intent or purpose of Pimlott to commit the crime which was indeed committed. The doing of any of these enumerated acts had to precede the theft of the car, and a finding within the framework of that charge would necessarily require the court-martial to reject the theory that the accused was only a passenger. Hicks v United States, 150 US 442, 14 S Ct 144, 37 L ed 1137 (1893). Furthermore, the court members were instructed that the accused's presence at the scene of the crime would not be sufficient to permit a finding of guilty. While more particular wording could have been employed by the law officer, we are sure that phrase, in the context used, would be interpreted to mean that mere presence in the third car would not be sufficient. Certainly, if the defense desired any clarification of that particular part of the instruction, a request was necessary. Failing to do that, the accused is not in a position to complain on appeal that ambiguity existed. United States v Miller, 8 USCMA 33, 23 CMR 257.

For all of the foregoing reasons, we conclude the decision of the board of review should be affirmed. It is so ordered.

Chief Judge QUINN concurs.

Judge FERGUSON concurs in the result.