UNITED STATES, Appellee

v

WILLARD R. WALTERS, Staff Sergeant, U. S. Air Force, Appellant

10 USCMA 598, 28 CMR 164

No.12,919

Decided August 14, 1959

*Lieutenant Colonel Philip J. Williamson, Lieutenant Colonel Robert O. Rollman* and *Major Dwight R. Rowland* were on the brief for Appellant, Accused.

*Lieutenant Colonel Robert W. Michels* and *Lieutenant Colonel Francis R. Coogan* were on the brief for Appellee, United States.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

By a general court-martial convened at Westover Air Force Base, Massachusetts, accused was convicted of absence without leave for a period of sixty-four days, in violation of Article 86, Uniform Code of Military Justice, 10 USC § 886, and of three specifications of presenting fraudulent claims against the Government, in violation of Article 132 of the Code, 10 USC § 932. He was sentenced to a forfeiture of $25 per month for one year and confinement at hard labor for a like period, and

this sentence was approved in turn by the convening authority and the board of review. Subsequently, so much of the sentence as exceeded confinement for four months and twenty days and forfeitures of $25 per month for three months was suspended, with provision for automatic remission.

Once during 1955 and twice during 1957, the accused presented claims for travel and dislocation allowances for his then dependent wife, Louise, and their minor daughter. The first of these

claims alleged travel from Westover Air Force Base, Massachusetts, to Barksdale Air Force Base, Louisiana, and the latter two from Barksdale to Del Rio, Texas, and from Del Rio to Epps, Louisiana, respectively.

The accused married Louise in October 1945, and was divorced by her in March 1958. From the time of his re-enlistment in the Air Force in 1951 until the divorce, she continued to receive a Class "Q" allotment. However, the couple did not reside together during all of these years, for shortly after his 1951 re-enlistment accused's wife left him. In 1952, she entered into an apparently bigamous marriage, and in 1953, the accused started living with one Catherine, whom he eventually married shortly after his divorce in 1958.

During the investigation prior to trial, the accused signed a voluntary statement which was subsequently received in evidence. In this statement, he admitted that neither his dependent wife nor child had performed the travel as claimed in the questioned vouchers; that they had not received from him any of the travel pay that had been awarded; and that Catherine had accompanied him as his wife during the three transfers. He also made conflicting statements, one indicating he knew all the travel claims were invalid prior to their submission and another that he was aware only of the invalidity of the final two claims.

During trial, accused admitted he knew the named dependents did not perform the travel as represented. However, his theory of defense was an alleged mistake of law, apparently founded on information received from other noncommissioned officers to the effect that travel allowances could be drawn for dependents receiving allotments, regardless of whether those dependents ever actually performed the travel. Accused also testified that at no time was he aware he was signing a fraudulent voucher.

The question before us arises from a portion of the law officer's instructions to the court concerning the element of knowledge of the false or fraudulent nature of claims against the Government. To facilitate an understanding of our problem, we quote the instructions at some length:

"The court is further advised that before you can convict the accused of making a false or fraudulent claim against the United States Government you must be convinced beyond a reasonable doubt that the accused had knowledge of the fictitious and dishonest character of the alleged fraudulent claim. You are further advised that claims, however groundless they may be, that are honestly believed by the maker to be valid are not false or fraudulent. Moreover, claims which are merely made negligently or without ordinary prudence are not false or fraudulent. Therefore in the instant case if you are not convinced beyond a reasonable doubt that the accused knew the claims alleged in the specifications of the charge were fraudulent you must acquit him of these specifications. Further, if you are not convinced beyond a reasonable doubt that the claims alleged in the specifications of the charge were not made as a result of negligence or lack of ordinary prudence you must find that the accused was not guilty of these offenses.

"*The court is further instructed that if it appears that a false claim is made under circumstances which would cause the false character of the claim to be apparent to an ordinary prudent man, it may be inferred that the claim was made with knowledge of its falsity.*

· "I have advised you that the accused's knowledge of the false and fraudulent nature of the claim is an essential element of the offense of making a false and fraudulent claim. You are instructed that you cannot convict the accused of the offense of making a false and fraudulent claim unless you are convinced beyond a reasonable doubt that he had knowledge of the false and fraudulent nature of such claim. However, in this regard such knowledge on the part of the accused, like any other fact, may be proved by circumstan-

tial evidence, that is, by evidence of facts or circumstances from which it may justifiably be inferred that the accused had such knowledge." [Emphasis supplied.]

Appellate defense counsel urge that the above-italicized portion—which we note parenthetically was drawn from paragraph 211a, Manual for Courts-Martial, United States, 1951, and was given at trial counsel's request over the objection of defense counsel—enunciates an erroneous and misleading principle inconsistent with other valid concepts expressed in the instructions. The emphasized language, they contend, served to replace the element of actual knowledge of the fraudulent nature of the claim as required by Article 132 of the Code, supra, with a standard of guilt more closely akin to the "reasonably prudent man test" frequently used in civil cases—in other words, that the correct test for honesty of belief was vitiated by an incorrect standard of honesty coupled with reasonableness of belief. Study of the quoted language in the light of the facts and law applicable to this case convinces us of the essential correctness of appellate defense counsel's view.

At the outset we reaffirm the well-settled rule that in order for a conviction under Article 132 (1) to stand, there must be a finding by the court of actual knowledge on the part of the accused of the false or fraudulent nature of the claim he has made or presented against the Government. In two of our earlier cases we were confronted with allied situations where the defenses of mistake of law or fact were raised to charges of larceny, a specific intent offense involving a subjective state of mind, and we held erroneous instructions that an honest mistake would not exculpate the accused unless it was also reasonable. United States v Rowan, 4 USCMA 430, 16 CMR 4; United States v Sicley, 6 USCMA 402, 20 CMR 118. See also United States v Rodriguez-Suarez, 4 USCMA 679, 16 CMR 253. Accordingly, in the present situation, where subjective knowledge is required, reasonableness is not one of the criteria which should be used in instructing on mistake of law or fact.

We note the questioned instruction in our present case varies in one essential from those above-mentioned cases which concerned mistake. Here, while the instruction bore indirectly on that defense which accused had sought to raise during trial, mistake as such was not the principal subject. Rather, the instruction was so framed that it bore directly on the essential element of knowledge required for conviction of the crime charged. We note this distinction only because appellate counsel for both sides have devoted considerable argument to whether accused, by his testimony, reasonably raised an issue of mistake. We find the question unimportant in our present setting, for assuming that he did not, the law officer was nevertheless required to instruct correctly on the essential elements of the offense charged, and the prejudicial effect of failure in this regard cannot be measured by the strength or weakness of the accused's defense. Had accused chosen to present no defense and remain silent, his right to correct instructions on the elements of the offense would have been equally prevailing. United States v Clay, 1 USCMA 74, 1 CMR 74; United States v Williams, 1 USCMA 186, 2 CMR 92; Screws v United States, 325 US 91, 89 L ed 1495, 65 S Ct 1031.

In the first paragraph of the above-quoted instructions, the law officer correctly advised the court that to be guilty the accused must have possessed knowledge of the dishonest and fraudulent nature of the claims. He then went on to state that acts resulting from mere negligence or lack of ordinary prudence were insufficient to support conviction. In effect, the court members were given a yardstick to measure knowledge which was the subjective presence or absence of certain facts in the mind of the accused at the time the claims were submitted. Had the further language of the Manual not been added, the instructions in this respect would have been unimpeachable. However, when the italicized portion was added, another and entirely foreign

ingredient was interjected for the court's consideration. No longer was the accused's mental awareness of the falsity the sole test, for there was added the hypothetical awareness of each court member as he projected the fictional state of mind of the "ordinarily prudent man" to the same circumstances. And when the instructions are considered by their four corners the two theories are substantially in equipoise. Thus arose a mutual inconsistency, for reduced to its simplest form the instruction allowed the court members to reason that if an ordinarily prudent man would have had knowledge of the fraudulent nature of the claims, the accused could be charged with this knowledge—this despite the prior instruction that claims which were merely made negligently or without ordinary prudence were not false or fraudulent. In opposition to the correct subjective test was placed an objective standard which, at best, forced the court members to choose one of two mutually exclusive principles to support a finding of the accused's knowledge. Under those circumstances the court members were faced with irreconcilable hypotheses and we are unable to divine their choice. United States v Williams, supra; United States v Noe, 7 USCMA 408, 22 CMR 198.

For the above-stated reasons, we hold the questioned portion of the instructions, as drawn from the Manual, constituted prejudicial error, and its use in the future should be discontinued. The decision of the board of review is therefore reversed and the case is remanded to The Judge Advocate General of the Air Force. A rehearing may be ordered or the record may be returned to a board of review for reassessment of sentence on the unauthorized absence offense to which the accused pleaded guilty.

Chief Judge QUINN and Judge FERGUSON concur.