UNITED STATES, Appellee

v

JAMES BETHAS, Private, U. S. Army, Appellant

11 USCMA 389, 29 CMR 205

No. 13,573

Decided April 15, 1960

*First Lieutenant Leonard Etz* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel Ralph Herrod* and *Major Edward Fenig*.

*Major John G. Lovrien* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel James G. McConaughy*.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was found guilty of four specifications of larceny by check, three specifications of absence without leave, and one specification of uttering a worthless check with intent to deceive, in contravention of Articles 121, 86, and 134, Uniform Code of Military Justice, 10 USC §§ 921, 886, and 934, respectively. He was sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for four years. The convening authority approved only so much of the sentence as provided for dishonorable discharge, total forfeitures, and confinement at hard labor for two years. A board of review in the office of The Judge Advocate General of the Army reduced the period of confinement to one year but otherwise affirmed the proceedings. The accused then filed a motion for reconsideration with the board, which was denied. Thereafter he petitioned this Court to consider several assignments of error. We granted his petition to determine whether an instruction on false pretenses given by the law officer was erroneous and prejudicial to his substantial rights.

390

Because the issue concerns only the fraudulent check offenses, we restrict our statement of facts to those crimes, and for our purpose in the case at bar we may treat the larceny counts and the Article 134 offense alike. The first specification concerned a check for $25.00 drawn on a Texas bank in October 1957, which was returned for lack of sufficient funds to pay upon presentment. The next three specifications involved checks for $50.00, $50.00 and $40.00, respectively, all drawn on a bank in Pemberton, New Jersey, in November or December 1957, each being returned because accused had no account at that bank. The last specification has to do with a check for $90.00 drawn on the Farmer's State Bank in Hanover, Pennsylvania, in November 1957, which also was returned because an account had never been opened in that bank.

The Government established all of the necessary elements of the various offenses, and the accused took the stand as a witness in his own behalf. He testified that at the time he wrote each of the checks he honestly believed he had an account with the bank with sufficient funds on deposit to pay the paper when

presented. According to him, the difficulties arose in the following manner. In October 1957, he forwarded $250.00 and a signature card with his signature affixed thereto to his wife, who was then living in a rural area near Hanover, Pennsylvania. He had made prior arrangements with her that she was to complete the signature card and then send both the money and the card to the Pemberton Bank to open a joint account. At the same time, he sent $100.00 to his wife under the same arrangements except she was to deposit that sum and the appropriate card with the Hanover Bank. Shortly thereafter, he conversed with his wife by telephone, and she told him she had carried out their prearranged plan. Subsequently, on November 14, 1957, he was notified by his commanding officer that the first of his checks drawn on the Pemberton Bank had been dishonored, and he thereupon called his wife on the telephone and she disclosed that she had not yet sent the money. She agreed to do so forthwith and, in reliance on this representation, he drew each of the three checks on the Pemberton Bank. Parenthetically, we note that the three checks were dated November 21, 1957, December 6, 1957, and December 11, 1957, and although the accused was home over the intervening week-ends, his testimony is at odds with that of his wife about their discussion of the status of their accounts.

The accused's wife in a deposition stated: That she received the signature card and $350.00 to be deposited in the Pemberton Bank and the Hanover Bank; that she never opened up an account in either; that she was pregnant and sick at the time and subsequently suffered a nervous breakdown; that her husband was not aware she had not deposited the money as agreed; and that she kept the money in an envelope but, while restitution was discussed, nothing was said about opening up the accounts.

For the purpose of determining the issues raised, we are willing to give credence to all the testimony most favorable to the accused. When we do that, we reach the same conclusion on the only theory of importance to the triers of fact as did trial defense counsel. He stated the defense theory as being this:

"The defendant's case on the check charges rests very briefly on one legal defense—in other words, *mistake of fact*. The fact that there was a checking account being a mistake. We do not maintain that this was an intelligent belief. We do not maintain anything in regard to the propriety with which Private Bethas handled his financial affairs. *We only maintain that he was honest in his belief that these checks would be honored.*" [Emphasis supplied.]

A law officer has a duty to instruct on all the issues raised by the evidence and in this case we believe he met his burden. In addition, he further specifically staked out accused's theory of defense. Moreover, under the posture of the evidence, he instructed properly and correctly. As we have reiterated on many previous occasions, instructions must be considered by their four corners and there are three separate instructions which must be interpreted together to finally resolve the issue. The first instruction has to do with the method of obtaining the property, and it reads:

". . . The pretense must, in fact, be false when made and when the property is obtained and it must be knowingly false and [sic] in the sense it is made without an honest belief in its truth. A false pretense is a false representation of past or existing fact. . . . For example, a person makes a false pretense by uttering a check made by him if at the time of the uttering he did not honestly intend to have sufficient funds in the bank available to meet payment of the check upon its presentment for payment in due course."

The second instruction is common to all of the specifications alleging larceny, and it required the court-martial members to find the essential elements of that offense. For illustrative purposes, we quote the one given by the law officer on the first specification of the larceny charge:

"The court is advised that to find accused guilty of Specification I and the Charge of Charge II, it must be satisfied by legal and competent evidence beyond a reasonable doubt: First, that on or about 21 October 1957 at Fort Dix, New Jersey, the accused wrongfully obtained this money from the possession of the Non-Commissioned Officers' Open Mess, Fort Dix, New Jersey which had a greater right to possession of the money than the accused; Second, that the Fort Dix, New Jersey Non-Commissioned Officers' Open Mess was an owner of the money, in the sense it had title to it or that it had possession of it, or the right to such possession; Third, that the money of the value of twenty-five dollars or some lesser value, in which case the finding should be in the lesser amount; And fourth, that the obtaining by the accused was with intent permanently to deprive the Fort Dix Non-Commissioned Officers' Open Mess of the use and benefit of the money."

The last instruction with which we need concern ourselves is the one setting out the defense theory of mistake of fact. In advising the court on that issue, the law officer stated:

"With reference to the question of mistake of fact, the defense has introduced evidence to show that at the time of the alleged offenses listed under the charge of Charge II and Charge III, that is the larcenies in Specifications 1, 2, 3 and 4 of Charge II and the uttering under the Specification of Charge III, the accused was under the mistaken belief that his wife had placed money in the two respective banks. With respect to this evidence, the court is advised that if the accused was laboring under such mistake and if his mistake was honest, he cannot be found guilty of larceny in the case of the Specification of Charge II, nor uttering in Charge III, for it is essential to the conviction of this offense that the prosecution prove beyond a reasonable doubt that the accused had the specific intent in the case of the offenses listed in Charge II, the specific intent to permanently deprive and in Charge III, the intent to deceive. The burden is on the prosecution to establish the accused's guilt by legal and competent evidence beyond a reasonable doubt. Consequently, unless you are satisfied beyond a reasonable doubt that the accused was not honestly under a mistaken belief that he had money in the bank—let me restate that. Consequently, unless you are satisfied beyond a reasonable doubt that the accused was not honestly under the mistaken belief that he had money in the bank, you must acquit the accused. Honest mistake as to the fact of having money in the bank, no matter how unreasonable, will exonerate the accused with respect to the offenses charged in Charge II, that is larceny."

The particular complaints about the first instruction quoted above are that it substitutes "want of honest belief" for "knowledge of the falsity" in the crime of obtaining property under false pretenses, and that it shifts the burden of proof to the accused. We were faced with similar problems in United States v Dinsmore, 11 USCMA 28, 28 CMR 252, but in that case we did not decide the questions because of no prejudice to the accused. In United States v Smith, 11 USCMA 321, 29 CMR 137, we disposed of the contention that the instruction shifted the burden of proof by holding that the advice did not have that legal effect. While Judge Ferguson disagreed with that conclusion, counsel for the parties concede the questioned instruction does not relieve the Government of its obligations.

Perhaps United States v Beasley, 3 USCMA 111, 11 CMR 111, is the closest case on the facts and law, and it might be dispositive of this case, but to settle the instructional question once and for all we will further develop the issue. That case had the same questions and similar instructions with respect to larceny by false pretenses. We there said:

"The instructions in the instant case fully described the subject of false pretense; and particularly and more aptly explained that phase of

392

the case relating to the belief of the accused as to the sufficiency of funds available to meet the payment of the checks upon presentation. They included all that the defense requested, and more. Taken as a whole, therefore, the instructions clearly, fully, and fairly informed the court of the applicable legal standards. The obligation of the law officer was substantially complied with, and there was no error in refusing to instruct in the precise language of the request."

In this case, the facts are such that when the instruction on false pretenses is interpreted properly it informs the court-martial of the applicable standards and otherwise correctly states the law. It is to be noted that that instruction deals with the element of wrongfully obtaining possession of the property and, if an accused makes a representation knowing it is false or makes it without an honest belief that it is true, and the owner is deceived thereby and parts with his property in reliance on the statement, the property has been wrongfully obtained by the accused. It requires little imagination to ascertain that if he does not honestly believe the representation he makes and it is in fact false, he has committed a fraud on the owner and his possession is not obtained rightfully.

In The Philadelphia, Wilmington & Baltimore Railroad Co. v Howard, 13 How 307 (US 1851), the Supreme Court announced this to be the law:

"These decisions go much further than this case requires, because the defendant not only induced the plaintiff to bring this action, but defeated the action in Cecil County Court, by asserting and maintaining this paper to be the deed of the Company; and this brings the defendant within the principle of the common law, that when a party asserts what he knows is false, or does not know to be true, to another's loss, and his own gain, he is guilty of a fraud; a fraud in fact, if he knows it to be false, fraud in law, if he does not know it to be true. Polhill v Walter, 3 B. & Ad. 114; Lobdell v Baker, 1 Met. 201."

While that case involved a civil action, it is authority for the proposition that a person is guilty of fraud—wrongfully obtaining property—if he asserts something to be true which he does not know to be true. We, of course, concede that a crime is not measured by the standards of civil law, but one element of the offense may be. Certainly, if possession is obtained in contravention of the rules of civil law, it is obtained wrongfully under a criminal code. Historically, the crimes of larceny and false pretenses were distinguishable but the distinction was less apparent where larceny was committed through obtaining possession by fraud. See 22 Am Jur, False Pretenses, § 3. But in both instances the original possession had to be wrongful, thus distinguishing those offenses from the later crime of embezzlement. All of those offenses are now grouped under Article 121 of the Code, supra, and that Article may be violated whether the original possession was obtained rightfully or wrongfully. Assuming it is necessary in the case at bar for us to decide whether accused took wrongfully, we have no difficulty in concluding that he did, for the owners only parted with their property because of his misrepresentations. What he held out to the payees was false and he cannot support a contention that his possession was rightful unless he honestly believed he was telling the truth. He contended he was, but the court-martial found he was not and when a misrepresentation is the operating cause of an owner parting with possession of his property, it should be obvious that the transaction is founded on illegality. When property is obtained wrongly with the concomitant appropriate intent, you have the essential elements of the crime of larceny.

When we consider all of the quoted instructions and apply them to the particular facts of the case we find the instructions sufficient, for the only issue was accused's honest belief that he had funds on deposit to pay the checks. That defense, if raised reasonably, un-

393

dercuts two elements of the offense, *i. e.,* that the money was wrongfully obtained and that the accused intended to deprive the owner permanently. The law officer recognized this principle, for a reference to the third quoted instruction will disclose he stated categorically that, unless the court members were satisfied beyond a reasonable doubt that the accused was not honestly under the mistaken belief he had money in the bank, they must acquit him. In addition, he re-emphasized the rule by advising them that no matter how unreasonable accused's belief might be, if it was honest he must be exonerated from the larceny offenses. Accepting accused's evidence at face value, he asserts that he honestly believed funds had been deposited to pay the checks and that was the reason they were issued. Under the instruction, the court-martial had to find he did not have that belief, and if he did not, his entire defense collapses for either he believed his wife had opened the account and made the deposit or he knew there were no funds to pay the checks. With the issue of mistake framed properly, the larceny instruction was adequate for it required the court to find on all essential elements of that offense, including wrongful possession and intent to deprive permanently. Obviously, there is ample evidence to support the court findings on all elements.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

I have heretofore set forth in my separate opinions in United States v Dinsmore, 11 USCMA 28, 28 CMR 252, and United States v Smith, 11 USCMA 321, 29 CMR 137, the rationale by which I conclude it is prejudicially erroneous to instruct the members of a court-martial that an accused's knowledge of the falsity of his representations is established when it is concluded he did not have an honest belief that those pretensions were true. Normally, therefore, I would be content to note my disagreement with my brothers, partic-

ularly when, as in this case, defense counsel has conceded that the error which I originally perceived did not harm the accused. Cf. Boatright v United States, 105 F2d 737 (CA 8th Cir) (1939).

The unwarranted extension of the offense of larceny by false pretenses, in the majority opinion, however, requires that I set down the considerations which lead me to believe that its rationale, entirely foreign to the previous discussion in United States v Smith, supra, is faulty.

Among other offenses, the accused was found guilty of several specifications of larceny and a bad check offense in violation, respectively, of Uniform Code of Military Justice, Articles 121, 10 USC § 921, and 134, 10 USC § 934. He was sentenced to dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for four years. With some reduction in the sentence, intermediate appellate authorities affirmed, and we granted review on the issue whether accused was prejudiced by the law officer's instruction that:

"... The pretense must, in fact, be false when made and when the property is obtained and it must be knowingly false and in the sense it is made without an honest belief in its truth."

Accused's alleged larcenies and the check offense were predicated upon the making and uttering of checks either upon nonexistent accounts or upon an account which contained insufficient funds to honor the instrument involved. My brothers concede that the evidence adduced by the accused is sufficient to raise an issue concerning his honest belief that his wife had opened accounts for him and that the checks would be honored upon presentment. In other words, the posture of the record is such that the members of the court-martial would have concluded either (1) that the accused was affirmatively aware that the representation involved in the negotiation of the checks was false, or (2) that he honestly believed the representation to be true, or (3) that he did not know whether it was true or false.

394

The first alternative shown by the evidence is fully covered by the instructions on the elements of proof of larceny and the bad check offense. The second issue was fully explained to the court-martial by the correct advice on the affirmative defense of mistake of fact. It is with the third issue that I am herein concerned, for it is covered by the instruction quoted above, and my brothers state that it, along with other pertinent considerations, establishes guilt of larceny by false pretenses. Thus, they contend that, if an accused makes a representation, which is in fact false, and he did not, at the time it was made, know whether it was true or false, he has made a knowingly false representation within the meaning of Code, supra, Article 121. This concept is entirely at odds with our former holdings in this area.

We have repeatedly held that Article 121 created no new offenses under the Code. It represents no more than a codification of the common-law crimes of larceny, embezzlement, and obtaining property by false pretenses. United States v Aldridge, 2 USCMA 330, 8 CMR 130; United States v Norris, 2 USCMA 236, 8 CMR 36; United States v Buck, 3 USCMA 341, 12 CMR 97. As was said in the last cited case, at page 343:

". . . Since the whole is equal to, not greater than, the sum of all its parts, that which did not constitute common law larceny, embezzlement, or false pretenses, prior to the adoption of Article 121 (a), supra, was not thereafter punishable as a violation thereof."

The offense of false pretenses, among other elements, involves the making by an accused person of a false representation which he affirmatively and subjectively knows to be false. Nelson v United States, 227 F2d 21 (CA DC Cir) (1955), Annotation, 53 ALR2d 1215; Robinson v United States, 42 App DC 186 (1914); 22 Am Jur, False Pretenses, § 58; Annotations, 35 ALR 344, 174 ALR 174. The principal opinion, however, does away with this element, for it approves an instruction which permits guilt to be found if the accused

did not know whether his representation was true or false. In short, regardless of Judge Latimer's disclaimer, he imports into the criminal law the civil fraud concept that one is held in law to know to be false that which he asserts to be the fact. The Philadelphia, Wilmington & Baltimore Railroad Co. v Howard, 13 How 307 (US 1851). Of the adoption of such concepts, it has been generally declared:

". . . Some judges have ventured to say that an attempt to punish criminally all kinds of fraud would exhaust all the revenues of the state in the building and maintenance of penitentiaries. The notion that it is impracticable to make the criminal law coextensive with moral delinquencies is evidently responsible for the fact that many cases of fraud and deceit are left to be dealt with exclusively by civil tribunals." [22 Am Jur, False Pretenses, § 13, page 451.]

More specifically, courts giving thoughtful consideration to the problem have rejected the notion that guilt of false pretenses can be so predicated. In State v Samurine, 47 NJ Super 172, 135 A2d 574 (1957), it was remarked at page 581:

"In an indictment for obtaining money by false pretenses, *defendant must be shown to have known of the falsity of the representation. Falsity, in the sense of [the New Jersey statute], must be subjective as well as objective; the statement must not only be false in fact but false to the knowledge of its utterer. The burden of proving guilty knowledge is on the prosecution, and failure of the State to prove this element compels acquittal even though a misrepresentation may in fact have been made.*

.   .   .   .   .

"We pause to comment upon the State's contention that 'if it appeared that defendants made the representations and did not know in fact that the representations were true, such evidence is sufficient to justify a verdict of guilty by jury,' citing 2 Wharton, Criminal Law (12th ed. 1932), § 1454, p. 1741. The exact quotation from Wharton is that 'proof that the

**395**

defendant was ignorant of a fact that he stated sustains a charge of false statement.' The author cities a single case in support, Reese River Mining Co. v Smith, L. R. 4 H. L. 79, 39 L. J. Ch. (N. S.) 849 (H. L. 1870), *a civil case sounding in equitable fraud and certainly not apposite in the instant circumstances."* [Emphasis supplied.]

In Avant v United States, 154 A2d 354 (Mun CA DC) (1959), the Municipal Court of Appeals for the District of Columbia was confronted with an instruction which permitted defendant's conviction of false pretenses without regard to his affirmative knowledge of the falsity of the representation if the jury found that the statement was made " 'recklessly and not caring whether it is true or false.' " In holding the instruction prejudicially erroneous, the Court pointed out that affirmative, subjective knowledge of the pretense's falsity was required, and that the objective standard of the advice to the jury permitted guilt to be found upon an improper predicate. See also State v Pickus, 63 SD 209, 257 NW 284 (1934), and State v Lien, 72 SD 94, 30 NW2d 12 (1947).

In other areas, this Court has also rejected the idea that criminal convictions may be built upon the accused's duty to know as compared to his actual knowledge. In United States v Curtin, 9 USCMA 427, 26 CMR 207, a majority of this Court, Judge Latimer dissenting, found that instructions permitting guilt of failure to obey a lawful order, in violation of Code, supra, Article 92, 10 USC § 892, to be founded upon "constructive knowledge" of the command were prejudicially erroneous. In rejecting the contention that constructive knowledge was sufficient, we said, at page 432:

"The instruction here under attack informed the court it was unnecessary for the prosecution to prove the accused had actual knowledge of the order that the proof of 'constructive knowledge' would suffice. The law officer explained that 'constructive knowledge' existed 'when the accused, by the exercise of ordinary care, should have known of the matter, whether or not he did so in fact.' Such an instruction is deficient for two reasons. Firstly, it was capable of misleading the court into believing that evidence of constructive knowledge would have been an acceptable substitute for proof of actual knowledge. Such is not the law."

In like manner, I do not believe that guilt of larceny by false pretenses may correctly be predicated upon an accused's failure to ascertain the truth or falsity of his representations. The introduction into our criminal law of this civil fraud concept does away with the traditional element of *scienter* and permits a conviction to be erected upon mere reckless assertions. While the end result may achieve the worthy objective of teaching military personnel to be careful with their bank accounts, the rationale by which it is reached unduly strains the terms of a heretofore plainly construed statute. Its adoption smacks of the legislative process rather than the judicial, and I suggest that such a broadening of Code, supra, Article 121, is better left to the branch of Government charged with the authority so to amend it.

Moreover, the interpretation which the Court today adopts is totally unnecessary. Adequate protection for commercial channels exists in the presence under Code, supra, Article 134, of two bad check offenses. Both punish dishonorably floating worthless paper, and they differ only in the presence or absence of an intent to deceive. United States v Downard, 6 USCMA 538, 20 CMR 254. It is here that the recklessness of the representations made in dishonored checks becomes pertinent, for we have spoken of these delicts as involving bad faith or gross indifference. United States v Downard, supra, at page 544; United States v Connell, 7 USCMA 228, 22 CMR 18. Indeed, as the intent to deceive involved in the major bad check offense is closely akin to the intent to defraud involved in larceny by false pretenses, the difference between the requirement of actual knowledge of the representation's falsity in the latter and the recklessness of accused's conduct in the former has

heretofore marked out one of the principal distinctions between the two crimes. I fear that my brothers, by approving the instruction before us today, heedlessly blur that difference.

In sum, I would hold that larceny by false pretenses involves actual knowledge on the part of an accused of the falsity of the representation he is alleged to have made. As I believe the instructions now before us do not set forth that standard and as well involve the deficiency which I discussed in United States v Dinsmore, supra, I must conclude that they were prejudicially erroneous.

Accordingly, I would set aside accused's conviction of false pretenses and return the record of trial to the board of review for reassessment of the sentence on the remaining findings of guilty.