UNITED STATES, Appellee

v

JAMES H. NIX, Staff Sergeant, U. S. Air Force, Appellant

11 USCMA 691, 29 CMR 507

No. 13,557

Decided July 29, 1960

Lieutenant Colonel James L. Kilgore and Lieutenant Colonel Philip J. Williamson were on the brief for Appellant, Accused.

Colonel John F. Hannigan and Major Lawrence J. Gross were on the brief for Appellee, United States.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

### I

Upon a rehearing, accused was arraigned before a general court-martial convened at Shaw Air Force Base, South Carolina, on two specifications of larceny, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. He pleaded not guilty, but was convicted of the thefts, in conjunction with two others—Wooten and Richmond—of a total of $1,753.00 from the base finance office by claiming and accepting payments not due him. He was sentenced to a bad-conduct discharge, forfeiture of $43.00

per month for six months, and confinement at hard labor for eighteen months. Intermediate appellate authorities affirmed, and thereafter this Court granted accused's petition for review in order to consider several questions. Each, together with the facts germane to the resolution thereof, will be treated seriatim hereinafter. It may be helpful at this point, however, to note it is not disputed that accused presented the claims and received payment therefor, nor that the money was not due him. Rather, accused's defense was based on certain exculpatory portions of his pretrial statements that the prosecution introduced in evidence against him. He contended that he received the money innocently as the dupe of others who schemed to steal through a system of false vouchers.

## II

One assignment of error arose in the following manner. During presentation of the Government's case, trial counsel called Wooten as a witness. After the usual preliminary questions had been answered, Wooten was asked whether he had conversed with accused regarding the base finance office. At that juncture the witness inquired of the law officer whether he might ask him a question. The reply was in the affirmative and the following colloquy ensued:

"WITNESS: Is it permissible for me to exercise my rights under Article 31?

"LAW OFFICER: That depends.

"TRIAL COUNSEL: Sir, at this time I would like to present to the law officer before ruling on this interlocutory question the fact that this witness's conviction is final with regard to these two Specifications, and pursuant to the Manual he cannot claim his privilege under Article 31. (Hands document to law officer.)

"LAW OFFICER: In answer to your question, Airman Wooten, you cannot claim your privilege under Article 31 on this stand concerning your testimony on those offenses of which you have been convicted and on which action has finally been taken.

"DEFENSE COUNSEL: Do I understand that he can still claim his privilege for possible offenses of which he has not been tried and convicted?

"LAW OFFICER: That is correct. Letter from Department of the Air Force, dated 14 January 1959, will be marked as Appellate Exhibit 3 and will be appended to the record."

Thereafter trial counsel again asked about any conversation with accused, but Wooten indicated he could not recall, and neither a statement the witness had made to the Office of Special Investigations nor a record of certain testimony he had given at his own trial refreshed his memory. He did state, however, that his testimony at his own court-martial was given under oath and he believed he had told the truth. A portion of his former testimony concerning his dealings with the accused was then received in evidence as a past recollection recorded. The defense assails the fact that knowledge of co-actor Wooten's prior conviction for these same thefts was brought to the attention of the court-martial, and challenges the propriety of the receipt in evidence of the record of Wooten's former testimony which was damaging to accused.

True it is that evidence of one of several accused's conviction at a separate trial is not admissible on the guilt of another accused. United States v Humble, 11 USCMA 38, 28 CMR 262. Likewise, it is true that the law officer here gave no cautionary instruction. However, it is to be noted that the fact of Wooten's prior conviction for his complicity in the instant larcenies first came to light only with regard to the interlocutory question of his privileges under Article 31. On that issue it was both relevant and competent, for in seeking to be informed of his privilege he was endeavoring to aid the accused and it was necessary to determine the collateral question.

Furthermore, no request was made for any out-of-court hearing, and the defense requested no cautionary instruction of the law officer and failed to register any objection at that time. It was only later, when trial counsel offered Wooten's past testimony about accused in evidence that the defense objected and moved for a mistrial on the grounds, *inter alia*, that "by admitting that testimony now you have placed before this court the fact that this man was convicted for these two offenses." Assuming that objection to be sufficent to remove this issue from the rule of waiver, we nevertheless conclude there is no fair risk that accused was prejudiced. See United States v Humble, supra. Not only did the defense, in impeaching Wooten on searching cross-examination, establish that he had been convicted of numerous larcenies from the finance office in a gross amount of some $10,000.00, but on re-examination by trial counsel Wooten's memory had apparently become more clear, and, as the defense conceded at trial, he testified substantially as he had at his own court-martial and admitted he had received a kickback from the accused. Certainly, in light of those facts, any inference they may have drawn from mention of Wooten's conviction for his part in the two instant offenses would have no impact on the court members. And particularly is that true when it is remembered that the whole thrust of the defense was that his co-actors were the thieves and accused their unwitting pawn.

Likewise, the above discussion is dispositive of the second arm of this assignment of error. The ■ Government argues that the extract of Wooten's former testimony was properly admitted in evidence, but we need not pass on that question. As we have previously noted, at trial the defense, in arguing against admission of the extract, admitted it was merely cumulative of the testimony he had given on the stand. Thus, there is no reasonable probability the prior testimony had any impact, and prejudice to accused cannot have resulted.

**694**

United States v Taylor, 6 USCMA 289, 20 CMR 5. Accordingly, this assignment must be resolved adversely to accused.

### III

A series of issues involve the instructions. One concerns the law officer's charge on false pretenses. He instructed the court-martial in this language:

"The court is further advised that. with respect to the element that the accused wrongfully obtained the property, obtaining property by false pretense is wrongful. A false pretense is a false representation of a past or existing fact. The pretenses must be in fact false when. made, and the accused must have known it was false to the extent that. he did not have an honest belief that. it was true. Although the pretense need not be the sole cause inducing the owner to part with his property, it is necessary that it be an effective and intentional cause of the obtaining."

This charge raises the same question that confronted us in United States v Bethas, 11 USCMA 389, 29 ■ CMR 205, and our decision in that instance is controlling. See also United States v Smith, 11 USCMA 321, 29 CMR 137. This claim of error, therefore, must. be rejected.

### IV

The law officer also instructed, with regard to accused's defense of mistake of fact, as follows:

"Now, as to mistake of fact, evidence has been introduced tending to show that at the time of the alleged offenses of larceny, the accused was under the mistaken belief that he was entitled to receive the payments described in the specifications. With respect to this evidence, the court is advised that if the accused obtained the property of another believing honestly, although mistakenly, that he possessed a legal right thereto, he.

cannot be found guilty of these offenses, for it is essential to a conviction for this offense that the prosecution prove beyond a reasonable doubt that the accused had actual or constructive knowledge that he was not entitled to these payments.

"The burden is on the prosecution to establish the accused's guilt by legal and competent evidence beyond a reasonable doubt. Consequently, unless you are satisfied beyond a reasonable doubt that the accused was not honestly under the mistaken belief that he was entitled to receive the payments described in the specifications, you must acquit the accused.

"An honest mistake as to the entitlement to receive the payments described in the specifications, no matter how unreasonable, will exonerate the accused with respect to the offenses charged. In determining the issue of the honesty of the accused's alleged mistake, you should weigh and consider the inherent probability or improbability of the evidence relating thereto. In this regard, you may consider the accused's age, education, military experience and background."

There can be no doubt, and the parties are agreed, that an honest mistake—quite without regard to its reasonableness—constitutes a complete defense to the offenses herein involved. Appellate defense counsel contend, however, that the law officer erred in referring to constructive knowledge in the first paragraph set out above, for the terms "honest mistake" and "constructive knowledge" are incompatible. In that connection, they invite our attention to United States v Curtin, 9 USCMA 427, 26 CMR 207, arguing that the term " 'constructive knowledge' . . . connotes an imputation of knowledge from attending circumstances, whether or not such a state of mind exists in fact." Thus they urge that the law officer submitted mutually exclusive principles to the court, which rendered his instruction prejudicially erroneous. United States v Walters, 10 USCMA 598, 28 CMR 164.

The difficulty with that argument is that the instruction in *Curtin*, supra, explained that constructive knowledge existed "when the accused, by the exercise of ordinary care, should have known of the matter, whether or not he did so in fact." Likewise, the charge in *Walters*, supra, spelled out that a finding of knowledge would be permitted if the falsity would have been apparent to an ordinarily prudent man. In the case at bar, however, the word "constructive" stood alone and was without any amplification of the nature of that in *Curtin* or *Walters*. To the contrary, the guideposts given by the law officer repeatedly advised that any honest mistake, however unreasonable, would exonerate accused and that unless the court was convinced beyond a reasonable doubt that he was not so mistaken, they must acquit him. And as can be seen from the full charge quoted above, the only elaboration provided was that the background and circumstances should be considered in determining the issue of the honesty of the asserted mistake, which was in similar vein to an instruction the law officer had previously given that while intent is ordinarily not susceptible of direct proof, it may be established by circumstantial evidence. Thus, assuming that the unamplified mention of constructive knowledge was improper, when the law officer's advice is considered in its entirety, there is no fair risk that the court-martial was misled into believing the issue turned on anything less than actual subjective knowledge. As a unanimous Court stated in the early case of United States States v Hatchett, 2 USCMA 482, 9 CMR 112:

". . . there is a well-understood rule of law, i.e., that instructions must be considered in their entirety and if, when gathered together by their four corners, they state the law properly and with sufficient clarity to be understood by the members of the court-martial, then

they are not prejudicial even though one sentence may be technically incorrect."

See also United States v Simpson, 10 USCMA 543, 28 CMR 109; United States v Kentucky, 8 USCMA 553, 25 CMR 57; United States v Miller, 8 USCMA 33, 23 CMR 257; United States v Crawford, 6 USCMA 517, 20 CMR 233. When we apply that rule, we are constrained to hold against accused on this issue.

## V

The two remaining assignments concerning instructions may be considered together. We quote the following summary of the pertinent facts giving rise to these questions from the board of review's opinion:

"It was the theory of the defense that the accused honestly, albeit mistakenly, believed that he was entitled to the payments at the time of their receipt, and only later realized that he was not so entitled. Further, that even though he might thereafter be said to have 'withheld' the money in a literal sense, he could not be found guilty of larceny, as the requisite intent must accompany the taking. Defense counsel requested the law officer either to instruct that the intent to withhold must be concurrent with the taking or to omit all reference to the use of the word 'withholding' from his instruction on the elements of larceny. Counsel argued that the use of the term was intended to convey an instruction on the crime of embezzlement, and that the facts of this case did not support the theory of embezzlement, as there was no fiduciary relationship established; and, conversely, that such an instruction would confuse the court as it was subject to an interpretation that any subsequent withholding of property would support a finding that larceny was committed as of the time of the taking of said property."

The law officer refused the request, indicating he would instruct on mistake of fact, which, as we have seen, he did. He also gave the generally accepted definition of larceny embodying the terms "taking, obtaining, or withholding." Thus we must determine the propriety of instructing on the alternative of larceny by withholding and whether it was prejudicial to refuse to instruct as requested by the defense.

Although in giving the stock instructions on larceny, the law officer mentioned the alternative of withholding, it is to be noted that immediately thereafter he explained only acquisition by wrongfully obtaining, in the language previously quoted in part III of this opinion. And he also instructed on mistake as set forth in part IV herein, repeatedly charging that unless the court-martial was convinced beyond reasonable doubt that accused did not obtain the money honestly believing he was entitled to it, he must be acquitted. Moreover, it is to be remembered that the whole case was tried on the theory of mistake of fact, as asserted by accused's individual counsel in opening statement and repeated by counsel for both sides in their arguments prior to findings. Under those circumstances we need go no further than to repeat what we said in our recent decision in United States v Smith, supra:

". . . If there were any errors in the inclusion of the alternative of withholding, it presented no fair risk of prejudice to the accused. See United States v Lane, 9 USCMA 369, 26 CMR 149." [11 USCMA at page 326.]

Likewise, it is clear that we must rule against accused on the law officer's refusal to instruct in the language requested by the defense. The law is settled that when the issue is framed satisfactorily within the charges given by the law officer, there is no error in refusing a defense proposal. See United States v Scales, 10 USCMA 326, 27 CMR 400; United States v Beasley, 3 USCMA 111, 11 CMR 111. When the instructions in the case at bar are considered as a

696

whole, we agree with the conclusion of the board of review that they fully and correctly apprised the court-martial as to the issue they must decide and the law applicable thereto. Accordingly, we overrule these two assignments.

## VI

The remaining issue concerns the argument of trial counsel during the presentence proceedings. The following quotation from the record reflects the argument of which accused's appellate counsel here complain and the objection lodged against it by the defense at trial.

"TRIAL COUNSEL: . . . Now, in view of the fact that this is a re-hearing, you are going to be limited as to the sentence that you can adjudge. The law officer will instruct you, and if I may presume upon the law officer, you will be instructed that the maximum sentence you may adjudge is dishonorable discharge, total forfeitures, and confinement at hard labor for eighteen months, one year and six months. Gentlemen, if this was the trial, the initial trial, for the offenses the accused—

"DEFENSE COUNSEL: Objection.

"LAW OFFICER: To what?

"DEFENSE COUNSEL: I object to any mention as to what the maximum sentence might be were this the original trial.

"LAW OFFICER: I don't know what he is going to say.

"DEFENSE COUNSEL: Again you can't unring a bell.

"LAW OFFICER: The objection is overruled.

"TRIAL COUNSEL: Gentlemen, if this was the original trial the accused could receive dishonorable discharge, total forfeitures, and five years confinement for each offense.

"DEFENSE COUNSEL: We object. We ask that the court be instructed to disregard that.

"LAW OFFICER: Objection overruled. Proceed."

Thereafter, in the course of his instructions the law officer advised the court members that the maximum imposable punishment was dishonorable discharge, total forfeitures, and confinement at hard labor for eighteen months, and charged them that they alone were responsible for assessing an appropriate sentence.

Under the decisions of this Court in United States v Eschmann, 11 USCMA 64, 28 CMR 288; ▆▆▆▆▆▆ and United States v Crutcher, 11 USCMA 483, 29 CMR 299, it is clear that the argument by trial counsel was improper. See also United States v Ledlow, 11 USCMA 659, 29 CMR 475. Those cases are controlling as to this assignment and require reassessment of the sentence.

## VII

Accordingly, and for the above stated reasons, the decision of the board of review as to the sentence is reversed. The record is returned to The Judge Advocate General of the Air Force for submission to the board of review for reconsideration of the appropriateness of sentence in light of this opinion.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

Most of the issues before us in this case have been decided favorably to the Government during this term. With respect to these, I invite attention to the views heretofore expressed in my separate opinions in United States v Humble, 11 USCMA 38, 28 CMR 262; United States v Bethas, 11 USCMA 389, 29 CMR 205; and United States v Smith, 11 USCMA 321, 29 CMR 137.

Without regard to these issues, however, it is obvious that this case should be reversed on other instructional deficiencies. In United States v Curtin, 9 USCMA 427, 26 CMR 207, a majority of this Court concluded that construc-

697

tive knowledge could not be made the basis for criminal liability. Here, the law officer advised the members of the court-martial that it was essential that the prosecution prove beyond a reasonable doubt "that the accused had actual or constructive knowledge that he was not entitled to these payments." The court, therefore, was permitted to find accused guilty of larceny despite his honest belief he was entitled to the payments if they also found he *should have known* he was not so entitled. Cf. United States v Curtin, supra; United States v Walters, 10 USCMA 598, 28 CMR 164. This instruction is merely another way of saying that an accused's honest mistake must also be reasonable if it is to be a defense of larceny. We have repeatedly rejected this contention. United States v Sicley, 6 USCMA 402, 20 CMR 118; United States v Jones, 7 USCMA 83, 21 CMR 209; United States v Thornton, 8 USCMA 446, 24 CMR 256; United States v Smith, 9 USCMA 317, 26 CMR 97; United States v Holloway, 10 USCMA 595, 28 CMR 161. As the question of accused's guilt was submitted to the court upon this erroneous premise, it is clear to me that reversal is required.

The principal opinion seeks to distinguish our holding in *Curtin,* supra, on the basis that the law officer here did not define the term "constructive knowledge." This, indeed, is a distinction without a difference. Not only are court members presumed to follow and apply the law officer's instructions but it is also to be noted that, due to the participation in the administration of military justice by lay personnel, court members are frequently required to engage in the study of the Manual for Courts-Martial, United States, 1951, and to undergo prescribed training in military law. Therefore, to say there is no fair risk here that the members misapplied the concept involved in the instructions is simply to fly in the face of reality.

I would reverse the decision of the board of review and order a rehearing.