## RICHARDSON v. ZUPPANN.

### No. 223.

United States District Court
M. D. Pennsylvania.
Jan. 21, 1949.

Croskey & Edwards, of Philadelphia, Pa., Fitzgerald & Kelly, of Scranton, Pa., and Merrill W. Linn, of Lewisburg, Pa., for petitioner.

Arthur A. Maguire, U. S. Atty., of Scranton, Pa., Charles W. Kalp, Asst. U. S. Atty., of Lewisburg, Pa., and Lt. Col. Thayer Chapman, Office of the Judge Advocate General, of Washington, D. C., for respondent.

FOLLMER, District Judge.

This habeas corpus proceeding was instituted by Edward H. Richardson, a military prisoner at United States Disciplinary Barracks, New Cumberland, Pennsylvania, who was convicted by a General Court-Martial on two charges involving violations of the 95th and 96th Articles of War, 10 U.S.C.A. §§ 1567 and 1568. The first charge involves an alleged conspiracy with one Angelo Ricci, between December 1, 1945, and March 15, 1946, to accept contributions of money and gifts of property from persons and firms with whom petitioner, as Chief Public Works Officer, Allied Military Government, Venezia-Giulia, Trieste, Italy, personally and through his subordinate officers and employees, was to carry on negotiations as an agent of said Allied Military Government. The second charge involved the acceptance by said petitioner at various times in 1947 through his agent, one Angelo Ricci, and others, of money, checks, and personal property from construction firms with whom petitioner, as Chief Public Works Officer, Allied Military Government, Venezia-Giulia, had negotiated for said Allied Military Government; and also with having wrongfully in his possession on or about July 7, 1947, American currency in the sum of about $27,259.00 in violation of War Department Circular No. 256, 1946, paragraph 8e. On the conviction, as aforesaid, petitioner was sentenced to be dismissed from the service, to forfeit all pay and allowances due or to become due, to be confined at hard labor for five years, and to pay to the United States a fine of $3,000. Petitioner appealed to the Army reviewing authorities and after a thorough, exhaustive and painstaking review his conviction and sentence were affirmed.

Petitioner claims he was denied due process substantially for the following reasons:

1. That the pre-trial investigation under der Article of War 70, 10 U.S.C.A. § 1542, was conducted in such a manner as to deprive the General Court-Martial of jurisdiction of the petitioner.

2. An unlawful search and seizure which provided evidence upon which he was convicted.

3. Admission in evidence of a confession obtained from petitioner while he was under an unlawful arrest and unlawfully confined.

4. Trial not fair and impartial, as evidenced by prejudicial remarks of the Trial Judge Advocate in his closing argument.

The parties are in substantial agreement on the facts, though there is serious disagreement as to the legal effect of such facts.

The Court-Martial record is in evidence and oral testimony was presented upon the hearing in this Court. The facts as developed from the testimony before the Court-Martial and this Court are briefly as follows:

In June, 1945, the armed forces of the United States and Great Britain jointly occupied Venezia-Giulia, a province in Northeastern Italy, and the occupying forces established what was designated as the Allied Military Government over the area. The seaport city of Trieste, Italy, which later became the Free Territory of Trieste, was located within the geographical boundaries of Venezia-Giulia.

Pursuant to proper orders, petitioner reported for duty with Headquarters Allied Military Government on September 12, 1945, in the capacity of Chief of the Public Works Division. This division was charged with control over all public works including construction and repair of roads, bridges, docks, housing and utilities in the area; it occupied offices in the Ministry of Public Works Building, Trieste. Petitioner had for his chauffeur and interpreter an Italian by name Angelo Ricci, and as his stenographer one Miraslava Bessi.

An investigation of the Public Works Division had been in progress for nearly a month when on August 7, 1947, formal charges were preferred against petitioner and on the same day Major Kenneth E. Peel was designated as the impartial investigator under Article of War 70 to investigate the same and return his report within forty-eight hours.

It appears that a preliminary overall investigation had been in charge of one Leo J. Pagnotta, Chief of Criminal Investigation Division (C.I.D.) in Italy. Statements of eight witnesses interviewed by Pagnotta, together with three statements of petitioner taken by Pagnotta and a memorandum inventory of strong box taken from petitioner's office were delivered to Major Peel. The report of the pre-trial investigator indicated that the substance of the expected testimony of the said eight witnesses were made known to the petitioner, who thereupon indicated he did not desire to cross-examine such witnesses. Petitioner was also shown his own three statements given to Pagnotta and the memorandum inventory of the strong box.

It further appears from the testimony that during the course of the preliminary investigation conducted by Pagnotta a search of petitioner's office "on the American second floor," Public Works Building in Trieste, was had. The office had been completely frozen and as an incident of the search a footlocker bearing the name of a Major Freese, but the property of petitioner, was located in a bathroom adjoining petitioner's office. The footlocker contained sundry items of clothing and a metal box. The metal box was opened and found to contain a large amount of American and Swiss currency, and various articles of jewelry, etc. The subsequent admission in evidence of the result of this search and seizure petitioner strongly urges to have been unlawful and a violation of his rights under the Fourth Amendment of the Constitution.

By an order of the Commanding General dated July 8, 1947, petitioner was advised that an investigation was being made in connection with certain irregularities in the administration of the Office of Public Works, A.M.G., Venezia-Giulia; that he had been temporarily relieved from assignment as Chief Public Works Officer thereof, and ordered to report to the Commanding Officer at the Lido of Venice without delay. He was forbidden to return to his office or communicate with any of its personnel, or any person or persons with whom the office had done business; was not to discuss any matter relating thereto with any person or persons other than the authorized investigators; was not to leave the Island of the Lido of Venice for any purpose without authority of the Commanding General in order that the investigator or investigators would be able to communicate with him at any time.

Petitioner reported to the Commanding Officer at the Lido of Venice, Major Blanchard, on July 9, 1947, and was assigned the entire first floor of the Excelsior Hotel for himself and his family. On July 10, 1947, petitioner was placed in arrest and for the purpose of the arrest his quarters were those assigned to him in the Excelsior Hotel.[1] For a portion of the time while there he was under a twenty-four hour guard. He was not deprived of any meals, comforts or necessities of life. While thus in custody petitioner was interviewed on several occasions and his statements of July 11, July 12, and July 31, 1947, were taken. These statements were admitted in evidence at the Court-Martial. Petitioner claims the confessions were inadmissible because they were taken while he was in unlawful custody.

[1] Order of Arrest, Defense Exhibit C, Court-Martial Record page 487.

The charges were preferred August 7, 1947, and the Court-Martial held from November 12, to November 20, 1947.

■ The record of trial was reviewed by the reviewing authority and held legally sufficient. It was again reviewed by the Board of Review in the Office of the Judge Advocate General and with the concurrence of the Judge Advocate General was held to be legally sufficient to support the sentence. The sentence has been confirmed, all as required by the Articles of War. Rulings of Administrative officers charged with the execution of the statutes affecting the Army are entitled to great weight.[2]

■ The extent of the power of civil courts to review the actions of military tribunals is definitely circumscribed. This court's power in the instant case is limited to "(1) Was the military court properly constituted; (2) did the court have jurisdiction over the person; (3) did it have jurisdiction to try the offense; (4) did it pronounce a sentence which it was authorized to pronounce?"[3]

A careful review of the Court-Martial record convinces me beyond peradventure of doubt that this petitioner had a fair trial. Having in mind the difficulties attendant upon these military proceedings, the ease with which on occasion details important to one accustomed to the rigors of our civil procedure are brushed off, due mostly to the fact that they arise and call for disposition in a war atmosphere, this case is strikingly free of all such suggestions. The petitioner was represented by able and aggressive counsel. The court was extremely careful of petitioner's rights. After petitioner had waived the reading of the charges and before the trial actually started, petitioner was on three separate occasions[4] given the opportunity to make special pleas. No objection was made at that time to a single item forming the basis of his present petition.

■ As to petitioner's first contention that the General Court-Martial was without jurisdiction because of the fact that there was no fair and impartial investigation as prescribed by Article of War 70, it is true that the investigating officer did not personally interview any of the witnesses. However, as previously stated, an investigation had been under way for approximately one month before the appointment of the investigating officer. This examination was conducted by the Army's Criminal Investigation Division (C.I.D.), statements of eight witnesses were taken and given by the Chief of this division to the investigating officer as statements of witnesses who would be available to the prosecution. The investigating officer then submitted the eight statements to petitioner, together with three statements that petitioner had given the C.I.D. investigator and a memorandum inventory of the contents of the metal box taken from petitioner's office. He was thus fully and completely apprised of the evidence that he would have to meet, and was given an opportunity to cross-examine the witnesses. He refused the offer. I find nothing in the record to indicate that petitioner, a Major in the Army and certainly acquainted with his rights, found any fault with the pre-trial investigation as to its timing, its method of procedure, or its scope. The statements of the eight witnesses spoke for themselves and they were made available to petitioner and he was advised of his right to cross-examine such witnesses. His indicating that he did not desire to cross-examine the witnesses was certainly justification for Major Peel adopting the statements without feeling the necessity for any further interviewing of the same on his part.[4½] He certainly was not taken by surprise. Furthermore, he made no request of the pre-trial investigator for the production or privilege of interview of witnesses on his own behalf, that was not complied with. Consequently, in view of the fact that the accused, by his own voluntary act, did not

---

[2] Hironimus v. Durant, 4 Cir., 168 F. 2d 288.

[3] Glenn v. Hodges, D.C.S.D.N.Y., 79 F. Supp. 400, 401.

[4] Petitioner's Exhibit No. 1 (Record of

Trial by General Court-Martial) at pages 13b, 15, and 16.

[4½] Becker v. Webster, 2 Cir., 171 F. 2d 762. See also Henry v. General Courtney H. Hodges, 2 Cir., 171 F.2d 401.

press for any further investigation and did not object to that which was made, I am firmly of the opinion that the thorough and impartial investigation required by Article of War 70 was complied with.

As to the second contention that the search and seizure was unlawful, this search and seizure was made in the official office of petitioner as an Army officer on an Army reservation. The position of the Judge Advocate General in this matter is definite and unequivocal, as in CM 244713, Kemerer, 28 Board of Review 393, 403:

"The immunity from searches and seizures guaranteed by the Fourth Amendment to the Constitution does not extend to premises on military reservations."

Again in CM 201878, Bashien: "The Judge Advocate General has held that the Commanding Officer of any person subject to military law, by virtue of the authority and control which he has as commanding officer, may enter the quarters of an officer or soldier on a military reservation without permission of the accused and conduct a search therein, and that evidence so obtained is admissible." Citing CM 171626, Cutchin.

Again, in JAG 250.413, Section 395 (27), Digest of Opinions of The Judge Advocate General, 1912–40, it was held: "Authority to make, or order, an inspection or search of a member of the military establishment, or of a public building in a place under military control, even though occupied as an office or as living quarters by a member of the military establishment, always has been regarded as indispensable to the maintenance of good order and discipline in any military command. *, * * Such search is not unreasonable and therefore not unlawful."

■■■ The Fourth Amendment prohibits only unreasonable searches and seizures. "There is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances." [5] In this case, "in an occupied country under Military Government, a search and seizure deemed necessary by the highest military commanders, ordered by them to be conducted in the manner customarily employed by the military, with their orders relayed down the chain of military command, and executed in an orderly manner by military personnel, cannot be termed unreasonable." [6] I therefore conclude that petitioner's rights under the Fourth Amendment were not violated.

■■■ As to the contention that petitioner was denied due process because of the admission in evidence of confessions which were taken from him while under an unlawful arrest and restraint, this, of course, presents a question as to the admissibility of evidence, which is appropriate subject matter for an appeal, and consequently is not subject to review by habeas corpus. [7] But in any event there is no merit in petitioner's contention. This matter received thorough consideration in the customary review proceedings and I can do no better than to quote with complete approval from the Opinion of the Board of Review as follows:

"It has been vigorously contended by civilian counsel for accused, in oral argument and in his brief, that accused's confession herein should be excluded because obtained while accused was under what was said to be an unlawful arrest or restraint. It will be noticed that accused was placed under administrative restraint on 8 July 1947, that he was ordered into arrest in quarters at the Excelsior Hotel, Lido of Venice, on 10 July 1947, that his confession was taken on 31 July 1947 after several interrogations, and that the charges herein were preferred on 7 August 1947. We have hereinbefore determined that, aside from the issue raised by the allegedly unlawful restraint, accused's confession was voluntary in that it had not been procured by force or promise of favor or immunity. Without deciding whether accused was in fact unlawfully restrained, but assuming for the sake of argument on-

---

[5] Go-Bart Importing Co. v. United States, 282 U.S. 344, 357, 51 S.Ct. 153, 158, 75 L.Ed. 374; Harris v. United States, 331 U.S. 145, 150, 67 S.Ct. 1098, 91 L.Ed. 1399.

[6] United States v. Best, D.C.D.Mass., 76 F.Supp. 857, 864.
[7] Miller v. Hiatt, 3 Cir., 141 F.2d 690. See also Upshaw v. United States, 69 S. Ct. 170, 93 L.Ed. —.

ly that he was, we will now inquire whether the law will raise an inference of coercion from the bare fact of unlawful arrest or restraint where in all other respects a confession taken while in such durance is shown to have been voluntary.

"At common law, it was held that a confession which was shown to have been the free and voluntary act of accused was not to be excluded because of what was considered the incidental circumstance that it was obtained while accused was in unlawful custody (Sylvester Thornton's Case, 168 Eng.Rep. 955, overruling Ackroyd's and Warburton's Case, 168 Eng.Rep. 954; CM 320230. Hoffman, supra [United States v. Hoffman, 2 Cir., 137 F.2d 416], should be distinguished on the ground that actual coercion was shown). On the other hand, the Supreme Court of the United States, in the exercise of its general supervisory powers over the procedure to be applied by the civil Federal courts in the administration of justice and without calling into operation the Constitutional guarantees of due process and the right against self-incrimination, has held inadmissible a confession taken while accused was in unlawful custody regardless of the otherwise voluntary nature of the confession (McNabb v. United States, 318 U.S. 332, 341; see also dissenting opinion, 347 [63 S.Ct. 608, 87 L.Ed. 819]; Anderson v. United States, 318 U.S. 350, 355 [63 S. Ct. 599, 87 L.Ed. 829]; United States v. Bayer, 331 U.S. 532 [67 S.Ct. 1394, 91 L.Ed. 1654]). The somewhat novel rule of evidence announced in this line of authority is not applicable to courts-martial, however, since the formulation of their correct procedure is vested in the legislative and executive departments of the Government (Const. art. 1, Sec. 8; AW 38; CM 307533, Boston, 1 BR (POA) 287, 296). In Paragraph 114a of the Manual for Courts-Martial, 1928, where the tests to be applied to a particular confession in gauging its voluntary or involuntary nature are laid down in general terms, it is stated: '* * * No hard and fast rules for determining whether or not a confession was voluntary are here prescribed. The matter depends largely on the special circumstances of each case. * * *' (Italics supplied).[8]

"It follows, then, that in military practice a confession is not to be held inadmissible merely because, although otherwise free from taint, it had been taken while accused was in unlawful restraint. In the instant case, without animadversion upon the character of the restraint of which accused complains and after a careful examination of all the circumstances attending the securing of accused's confession, we are of the opinion that such confession was in fact and law voluntary and that it was properly received in evidence."[9]

Finally, the contention that the trial was not fair and impartial, and that petitioner was prejudiced by remarks of the Trial Judge Advocate in his closing remarks, I have already placed on record my appraisal of this trial as to its fairness, its impartiality, and the unusual ability of its personnel. I have arrived at this conclusion from a most thorough study of the complete record. Petitioner's only specific charge in this regard is the remarks of the Trial Judge Advocate. In the first place, closing arguments of counsel are not ordinarily part of the record and they are not in this Court-Martial record, nor was any evidence in relation thereto adduced at this hearing. Assuming, for the sake

---

[8] The Manual for Courts-Martial, 1928, also provides in Paragraph 114a, page 115, "* * * The fact that a confession, otherwise admissible, was made to an investigating officer during an investigation of a charge, does not make the confession inadmissible."

Incidentally, it might here be noted that both of the above quotations from the Manual for Courts-Martial, 1928, have been incorporated verbatim in the Manual for Courts-Martial, U. S. Army, 1949.

[9] Petitioner's Exhibit No. 1 (Record of Trial by General Court-Martial) at pages 24 and 25.

Supplementing the quotation from the Opinion of the Board of Review, I find moreover as a fact that in this case the arrest and restraint were in strict and literal compliance with the procedure outlined in the Manual for Courts-Martial, U. S. Army, 1928 (Corrected to April 20, 1943) Chapter V, Paragraphs 18, 19, and 20.

of argument, that the remarks ascribed to the Trial Judge Advocate were as indicated in the petition, I find nothing in the record to indicate that the court was adversely affected thereby. It is not the type of remark that in a civil case would disturb this Court. At its worst it is counsel's estimate of evidence brought out at the trial.

The Petition for Writ of Habeas Corpus is accordingly denied and the Rule to Show Cause dismissed.