**UNITED STATES of America,
Appellee,**

v.

**Gene A. GRISBY, Appellant.**

**No. 9234.**

United States Court of Appeals
Fourth Circuit.

Argued Jan. 7, 1964.

Decided Aug. 14, 1964.

John H. Wrighten, Charleston, S. C., for appellant.

Terrell L. Glenn, U. S. Atty., for appellee.

Before HAYNSWORTH and BOREMAN, Circuit Judges, and HUTCHESON, District Judge.

HAYNSWORTH, Circuit Judge:

Convicted of theft of property of the United States, the defendant has appealed. His contention is addressed to the denial of his motion to suppress the stolen property as evidence. The property was seized in a search of his living quarters on a military reservation. Since the search was conducted in accordance with military law under the direction of proper military authority, though without the sanction of a civilian search warrant, we find no violation of the defendant's Fourth Amendment rights.

On February 2, 1963, the defendant, Grisby, was a corporal in the Marine Corps. His duties were those of a military policeman at the Parris Island Marine Recruit Depot. With his wife and children, he occupied government-owned quarters on the base in an area known as Ribault Village.[1]

During the early morning hours of February 2, 1963, someone broke into the Enlisted Men's Club on the base and removed ten cases of beer in cardboard cartons. On February 4th that crime was under investigation by the Provost Marshal, when investigators in that office received a report from one of Grisby's neighbors. Learning of the theft from the Enlisted Men's Club on the morning of February 2nd, she thought it significant that she had seen Grisby and another drive up to Grisby's house in an MP truck between 4:30 and 5:00 o'clock that morning and carry a number of boxes from the truck into Grisby's house. The investigators knew that Grisby had been in charge of the MP patrol on duty in the early morning of February 2nd. With

1. This was low cost housing provided for married enlisted personnel. The occupants were required to pay rent.

the report from the neighbor, they questioned a private who had ridden "shotgun" with Grisby from four to six o'clock that morning. He confirmed the neighbor's story. He told the investigators of Grisby's picking up some cartons from some bushes on the base and of his helping Grisby carry the cartons into Grisby's quarters.

The Provost Marshal consulted the Chief of Staff, informing him of what his investigators had learned and requesting permission to search Grisby's quarters. The Chief of Staff, on behalf of the commanding General, ordered the search.

Grisby was summoned to the office of the Provost Marshal, and accompanied the investigators to his quarters. There he inquired if the investigators had a warrant, protesting their entry into his quarters without one. He was told that they did not have a warrant, but were acting under the authority of the Chief of Staff. The investigators entered Grisby's quarters. They found no cases of beer, but quantities of other articles belonging to the United States. They seized those articles.

Under a general agreement between the Defense Department and the Attorney General, Grisby was not tried by a Court Martial. He was turned over to civilian authorities. A Grand Jury returned an indictment charging him with the theft of the property, its receipt, or both.

After a pretrial hearing on Grisby's motion to suppress, the District Court denied the motion as it affected articles seized during the search of Grisby's quarters. Suppression was granted, however, of articles seized in a search of the trunk of Grisby's automobile. That search, removed in time and place from the search of the living quarters, was not within the authorization of the Chief of Staff, and the District Court found it was accomplished without Grisby's consent. The count charging felonious possession of the articles seized from the automobile was then nol prossed.

At the conclusion of a trial to the Court, without a jury, Grisby was convicted on one of the counts.

On this appeal, Grisby's sole point is the absence of a search warrant at the time his quarters were searched. He does not question the existence of probable cause to procure a warrant or procedural compliance with military law. He stands solely upon the contention that a District Court may not recognize as lawful any search of living quarters unless authorized by a valid warrant or incident to a lawful arrest.

If military law controls, there is no doubt about the validity of the search. Under ¶ 152, ch. XXVII, Manual for Courts-Martial, United States, 1951, promulgated by the President, with Congressional authorization, a search of property located within a military installation and occupied by persons subject to military law is valid when authorized by a commanding officer having jurisdiction over the place where the property is. The authorization of the Chief of Staff, acting for the commanding General, was in accordance with the Manual for Courts-Martial and validated, as a matter of military law, the search it approved.

The Judge Advocate General of the Army has frequently expressed the opinion that a commanding officer has an unqualified right to enter and search quarters of military personnel on the reservation he commands. This is said to be an attribute of his military authority and essential to the maintenance of order and discipline.[2] That is doubtless true in many contexts. The sergeant who inspects the barracks neither seeks nor obtains permission of the corporals and privates serving under him, and it would be a grave affront to military discipline if they undertook to exclude him.

Other searches of other property on military reservations also stand upon a very different footing from civilian property unrelated to military authority. The authority, for instance, of a military

---

2. See the references cited in the opinion of the Court in Richardson v. Zuppann, M.D.Penn., 81 F.Supp. 809, aff'd. 3 Cir., 174 F.2d 829.

picket to search any automobile entering a military reservation is widely recognized and has been judicially upheld.[3]

We are not concerned here with probable cause for the search, however. We can assume that the purpose of the requirement of the Manual for Courts-Martial that search of living quarters, such as Grisby's, be authorized by the commanding officer of the installation is to be certain that he will pass upon the question of the existence of probable cause for the search, just as the magistrate does who acts upon an application for a search warrant. The United States Court of Military Appeals has held by implication, at least, that the commanding officer's authorization of the search is dependent upon his determination that probable cause exists.[4]

Here, in the military context in which the question was presented to the commanding officer, we can find no fault with his determination that probable cause for the search existed, and Grisby assumes that if the same information had been presented to a magistrate, a valid search warrant would have issued. The defendant's objection then is not nonexistence of a basis for the issuance of a search warrant, but the fact that the authorization for the search was military and not civilian.

 Just as in some contexts the military must and does have authority to conduct searches without probable cause, so in some contexts it must and does have authority to conduct searches without the

authorization of civilian process. The military picket's search of automobiles entering a military reservation is such an example. When, also, military personnel are without the boundaries of the fifty United States, the military cannot be dependent upon civilian authority of the United States or that of a foreign nation, particularly one with which we may be at war. So long as in those circumstances it acts in accordance with military law, or the laws of war, its searches are lawful and evidence obtained is admissible in subsequent proceedings.[5]

This is largely true also in connection with the control of military personnel on military reservations. In many contexts, the exercise of military disciplinary authority, including the conduct of searches, could not be made dependent upon the issuance of valid civilian process if effective military controls are not to be gravely impaired. Doubtless it is for that reason that ¶152, ch. XXVII of the Manual for Courts-Martial is so sweeping and encompassing in its terms. That provision clearly authorized the search here, and probable cause for the search being present, the validity of the search as a matter of military law is clearly attested by United States v. Murray, 12 USCMA 434, 31 CMR 20.[6]

Grisby seems to contend, however, that even though the search was valid as a matter of military law, it cannot be recognized by a District Court as being valid. He seems to say that had he been tried and convicted by a Court Martial he would have had no basis for a contest

3. United States v. Crowley, N.D.Ga., 9 F. 2d 927.

4. United States v. Murray, 12 USCMA 434, 31 CMR 20. Since there was probable cause for the search here, Grisby has no standing to found a contention upon the fact that military law does not explicitly make a determination of probable cause prerequisite to the authorization of a search of semiprivate quarters on a military reservation. He makes no such contention.

5. United States v. Best, 76 F.Supp. 857, aff'd. 1 Cir., 184 F.2d 131; Richardson v. Zuppann, M.D.Penn., 81 F.Supp. 809, aff'd. 3 Cir., 174 F.2d 829.

6. We do not mean to suggest that the search would have been invalid under military law in the absence of a prior showing of probable cause for it, as that term is familiarly understood when used in connection with the issuance of civilian search warrants. The military environment may alter the requirements, and it bears heavily upon any determination of reasonableness. Since there is here no denial of the existence of probable cause in the civilian search warrant connotation of the term, we are not confronted with the question of whether less might suffice when the action is directed against military personnel on a military base.

over the admission in evidence against him of the property seized in his quarters, but that a District Court can recognize as valid only a search, the legality of which is founded in civilian law. We find no basis for such a distinction. Grisby was subject to military law at the time of the search. If the search was valid as a matter of military law when made, it was valid for all purposes, and admission of the fruits of the search ought not to be dependent upon the jurisdiction in which the subsequent trial is had.

█ The Fourth Amendment prohibits unreasonable searches. Searches as authorized by a valid search warrant are not prohibited because not unreasonable. Searches reasonably incident to lawful arrests are also not prohibited, for they too are not unreasonable. And we can find no basis for holding that a search conducted by military authority, which was completely lawful and valid when made as a matter of military law, is unreasonable under the Constitution. It is conceivable, of course, that a particular provision of military law might be unconstitutional, but then it would have no force in either military or civilian courts. It is thus purposeless to contend that the Fourth Amendment imposes limitations upon District Courts which are not imposed upon military authority. Different standards apply to military personnel, but that is not because the Constitution does not reach military courts but because military personnel are subject to military control and to military law. As the Supreme Court observed, "[t]o those in the military or naval service of the United States the military law is due process." [7]

Since the search of living quarters on a military installation occupied by one subject to military law was constitutionally valid as a matter of military law, the District Court properly recognized it as being not constitutionally unreasonable or invalid and properly refused to suppress as evidence the fruits of the search.

Affirmed.

---

7. Reaves v. Ainsworth, 219 U.S. 296, 304, 31 S.Ct. 230, 233, 55 L.Ed. 225.