UNITED STATES, Appellee

v

THEODORE L. PROTT, Jr., Private, U. S. Marine Corps, Appellant

20 USCMA 350, 43 CMR 190

No. 23,363

February 12, 1971

Lieutenant Scott M. Feldman, JAGC, USN, argued the cause for Appellant, Accused. With him on the brief was Francis L. Ruppert, Esquire.

Captain Frank J. Kaveney, USMCR, argued the cause for Appellee, United States. With him on the brief were Lieutenant Colonel Charles J. Keever, USMC, and Commander Michael F. Fasanaro, Jr., JAGC, USN.

FERGUSON, Judge:

The accused was convicted, among other offenses, of wrongful appropriation of a military vehicle (Charge IV), in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. His sentence to a bad-conduct discharge, confinement at hard labor for five months, and forfeiture of $100.00 per month for a like period has remained unchanged through appellate review to this level. We granted review on the single issue of whether the evidence was sufficient as a matter of law to support the finding of guilty to Charge IV.

The specification of Charge IV alleged that the accused, when he reportedly took the vehicle, acted in conjunction with Private Maciak.

Lieutenant Shea, Assistant Motor Transportation Officer, produced the daily dispatching record of vehicles for June 27, 1969 (Prosecution Exhibit 1).[1] The record revealed that the truck in question was assigned to Private Maciak at 1:15 p.m. on that day. The destination was the base area and the expected time of return was listed at 5:00 p.m. The record further reflected that the vehicle was returned at 8:00 a.m., having travelled thirty miles. In the "REMARKS" area the word "(None)" was set forth. Prosecution Exhibit 2 is an agreement between trial and defense counsel that the daily dispatching record for the following day, June 28th, contained no reference to the pertinent vehicle.

Lieutenant Shea testified that while he is the custodian of the records, the entries are made by the dispatcher. From these records he ascertained that the vehicle checked out by Private Maciak on the 27th was not returned on the 28th. He was then asked the following:

"Q [Trial counsel]. On Prosecution Exhibit 1, there is an entry

behind Private MACIAK's name saying, 'Time in: 0800; miles traveled: 30.' Can you explain that entry?

"A. Yes I can. In the morning, when the vehicle has not been returned, the logs have to be closed out by 0800. The trip sheet is closed out and an approximation of miles the dispatcher thinks was run the day before is logged in at that time.

"Q. So this is the standard procedure when the vehicle has not been returned, to fill in that space with 0800?

"A. Yes sir."

On cross-examination, Lieutenant Shea acknowledged that on July 2d he was informed that the truck had been located at Hill 55 in the Air Force section of the area. He personally went to the scene to "verify that it was our truck." The batteries were missing and the right front wheel was damaged. He admitted that by simply looking at the one day's log, he could not determine that the truck had not been returned on the 27th. The fact that it was missing was reported to him "[o]n or about 28 June 1969" by the section to which it was assigned.

Sergeant Kochert testified that the accused is the regular driver of the truck in question. For some time preceding the disappearance of the vehicle, Prott was helping Private Maciak to acquire his license as a driver. Kochert frequently saw them together in the truck. On the morning of June 27th, about 8:30 a.m. or 9:00 a.m., Sergeant Kochert saw both Prott and Maciak with the truck when they came by the carpentry shop where he is the noncommissioned officer in charge. He could not say who was driving at that time.

Sergeant Hemington also testified that Prott was the regular driver of the truck and that he was breaking in Maciak as a new driver. On the day after the truck disappeared both

---

[1] See Appendix.

**351**

Maciak and Prott were missing from the morning formation. He next saw Prott and Maciak about two weeks later when they were picked up together for being absent without leave.[2]

The record is simply devoid of evidence to connect the accused with the taking of the truck. There is evidence connecting the accused and Private Maciak as co-workers and Maciak is shown to have had the truck in his possession on the 27th. The *official record,* however, reflects that the truck was returned to the motor pool. Lieutenant Shea's testimony to the contrary is only explanatory of what he denominated as standard procedure in order to effectuate a closing out of the sheet. It does not establish as a fact that the truck was not returned. Only the dispatcher, who made the entry and initialed the log, was competent to verify that this entry was in fact inaccurate and he was not called to testify. The mileage driven on the 27th was not even approximated and there was no notation under "REMARKS" to indicate that the information in the log was other than accurate.

An official record made in conformity with an applicable law or regulation by one charged with the official duty of doing so is presumed to speak the truth. United States v Takafuji, 8 USCMA 623, 25 CMR 127 (1958); United States v McNamara, 7 USCMA 575, 23 CMR 39 (1957).

Even assuming that the truck was not returned to the motor pool, as alleged by Lieutenant Shea, there is still nothing in the record to connect the accused with the unlawful taking. The truck was checked out to Maciak and the responsibility to return it was his alone and not the accused's. No one testified to seeing Prott in or near the truck on the afternoon of the 27th or at anytime thereafter. Sergeant Kochert's testimony that he saw Maciak and Prott together in the truck on the *morning* of the 27th is of little value and is questionable in light of the official record (Prosecution Exhibit 1) which reflects that the truck was not dispatched that day until 1:15 p.m.

The fact that both Maciak and Prott failed to appear for formation on the 28th and were together when located some two weeks later is, likewise, not evidence that the accused was in any way implicated in the wrongful taking of the truck. While evidence that Maciak unlawfully absented himself may be used *against him* to infer a consciousness of guilt, it may not be attributed to the accused without some evidence that he was implicated in the taking of the truck.

We hold, therefore, that the evidence in this case was insufficient as a matter of law to sustain the conviction of the accused for the wrongful appropriation of the Government vehicle. United States v Yarborough, 1 USCMA 678, 5 CMR 106 (1952); United States v Peterson, 15 USCMA 199, 35 CMR 171 (1964). Reversal and dismissal are required. Article 67(e), Code, supra, 10 USC § 867; United States v Yarborough and United States v Peterson, both supra.

That portion of the decision of the Court of Military Review affirming the accused's conviction of Charge IV is reversed and the Charge and its specification is ordered dismissed. The record of trial is returned to the Judge Advocate General of the Navy. In light of the recommendation of the military judge, before whom this case was tried alone, that the punitive discharge be suspended (not concurred in by the convening authority), and since the accused's sentence to confinement has already been served, we believe that a rehearing on sentence on the basis of the remaining findings of guilty is appropriate. It is so ordered.

---

[2] The accused pleaded guilty to one specification of being absent without leave.

APPENDIX

"DAILY DISPATCHING RECORD
OF VEHICLES

27 JUN 1969 PAGE NO. 134

NAVMC 10031–SD

TRIP NO.: 64

USMC NUMBER: 95–12521

DRIVER (Name and Rank): PVT. D. C. MACIAK

TYPE VEHICLES: M35

PURPOSE: CARGO

REQUESTED BY: LT. ERNEST

REPORT TO: UTIL

DESTINATION: BASE AREA

TIME TO REPORT: 1330

EXPECTED RETURN TIME: 1700

TIME OUT: 1315

TIME IN: 0800

MILES TRAVELED: 30

DISPATCHER: WMM

REMARKS: (None)

It is certified that the above extracts from the daily dispatch record of vehicles of the motor pool, Marine Aircraft Group 16, First Marine Aircraft Wing, dated 27 June 1969, are true and correct copies of all relevant entries appearing thereon.

/s/ Robert L. Sikma
MILITARY JUDGE

/s/ Robert Cook
TRIAL COUNSEL

/s/ Nathaniel F. Emmons
DEFENSE COUNSEL

PROSECUTION EXHIBIT (1)."

Chief Judge QUINN and Judge DARDEN concur.