UNITED STATES, Appellee

v

ALBERT SIMMONS, Specialist Five, U. S. Army, Appellant

22 USCMA 288, 46 CMR 288

No. 25,987

May 25, 1973

*Captain Allan K. DuBois* argued the cause for Appellant, Accused. With him on the brief were *Colonel Arnold I. Melnick,* and *Captain Michael A. Mason.*

*Captain Richard A. Karre* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Major Thomas P. Burns, III, Captain Glenn R. Bonard, Captain Richard L. Menson,* and *Captain Ronald A. Cimino.*

## Opinion

DUNCAN, Judge:

While I disagree with the conclusion of the Court of Military Review that the appellant has no standing to challenge the legality of the search of the vehicle in which he was a passenger for the reason that he wrongfully appropriated it, I do find him to lack standing to challenge the search for another reason.

The appellant was tried by general court-martial for the offense of wrongful possession of heroin, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. On December 8, 1971, despite a not guilty plea,

he was found guilty as charged. He was sentenced to dishonorable discharge, forfeiture of all pay and allowances, confinement at hard labor for 18 months, and reduction to the lowest enlisted grade. The convening authority approved the findings and sentence without modification. On July 28, 1972, the Court of Military Review affirmed the findings and so much of the sentence as includes a bad-conduct discharge, confinement at hard labor for 12 months, total forfeitures, and reduction to the lowest enlisted grade. We granted review on the following issues:

I. Whether the Army Court of Military Review exceeded the limits of its fact finding power by concluding for the first time on appeal, without competent evidence in the record of trial, that appellant wrongfully appropriated the vehicle in which he was riding as a passenger and therefore had no standing to challenge the legality of a warrantless search of the vehicle.

II. Whether the military judge erred by admitting into evidence the fruits of an unlawful search.

The factual setting is as follows:
On August 3, 1971, a soldier named Jenkins picked up the appellant in a military vehicle and drove out of the gate at Camp Eagle, Vietnam, purportedly to look for a prostitute. Meanwhile, Sergeant Baltazar and Specialist Howerton, military policemen, with the approval of their operations sergeant, were stationed as part of a "drug suppression team" at a hilltop observation post overlooking Route 547, three miles from the rear gate of Camp Eagle. They were in direct communication with the remaining two members of the team, Specialist Four Allen and Specialist Willis, who were immediately inside the rear gate at Camp Eagle. Through earlier observation and knowledge, Baltazar and Howerton knew that the particular portion of Route 547 involved was a location where drug transactions had been made. Thus, the area came under the observation of the drug suppression team in an attempt to reduce the purchases of drugs from South Vietnamese nationals by members of the United States Army.

At approximately 4:30 p.m., Sergeant Baltazar and Specialist Howerton observed a military 1/4-ton truck proceeding from Camp Eagle along Route 547. The vehicle moved along the road until someone whistled, whereupon it stopped near a group of Vietnamese children. The children milled about the vehicle, coming within touching distance of it. The vehicle then drove for approximately 1/4 mile and stopped near a pole bridge. Sergeant Baltazar testified:

After the jeep drove up to the pole bridge, it turned around and came back. While it was turning around, I was watching the Vietnamese children in the gully along side the road. And one of them, well, they all came out, and one in particular in a red shirt, seemed to be carrying something under his shirt. Then, the jeep came back and stopped. The children were close to the passenger side and they were there for a few minutes and the jeep drove away. It drove up the road about maybe 200 meters and stopped. Then both the occupants got out of the vehicle. One of them, I'm not sure which one it was, and they both came around the vehicle. One of them seemed to be, well, one of them threw something white to the side of the road, and then they both went to the vehicle, and I noticed one seemed to be going through the motions right by the gas can, screwing the gas cap cover back on. Then they both had a cigarette and after they finished their cigarettes they both got in the vehicle and drove off back to Camp Eagle.[1]

Based upon their observations (Baltazar was using binoculars), Howerton radioed back to Allen and Willis at the gate and told them to stop the vehicle and search its gasoline can. He described the vehicle, stated that its occupants were black, and told ap-

[1] Specialist Howerton's testimony was substantially the same.

proximately when to expect the vehicle to enter Camp Eagle. Thereafter, when the vehicle in which the appellant was riding approached the gate, the guard was instructed to wave the vehicle over to the side of the road. After the occupants were informed by Allen that the vehicle was to be given a routine inspection, Allen opened the empty 5-gallon emergency gasoline can attached to the rear of the vehicle and, after turning it upside down and shaking it, removed a sock containing 104 vials of what proved to be heroin.

At trial the defense moved to suppress the evidence (Prosecution Exhibit 1, 104 vials containing a white powder) contending that there was no probable cause and that the search was illegal. The trial counsel argued that "since the vehicle was a military vehicle . . . the accused . . . did not have any sort of proprietary right as to this vehicle whatsoever" and that "[a] search conducted on this vehicle would not require his permission." Finding probable cause, the motion was denied by the military judge. The Court of Military Review concluded that the appellant had wrongfully appropriated the vehicle and thus had no standing to challenge the search.[2]

### I

Appellate defense counsel assert that appellant's standing to challenge the search was raised for the first time on appeal and that he had no opportunity to offer evidence at trial to establish his proper presence in the vehicle. The defense, in addition, asserts that the evidence is insufficient to show that Simmons or Jenkins wrongfully appropriated the jeep.

Contrariwise, Government counsel contend that because the evidence manifests that appellant accompanied the driver Jenkins for the purpose of procuring a prostitute, this is sufficient to find appellant, a passenger, a trespasser and without standing to challenge the search. The Government also contends that appellant lacked standing to challenge the search even if were not a trespasser, and that even if the reasoning of the Court of Military Review was erroneous, its conclusion was correct.

The following discussion of the problem of standing stems from the Court of Military Review's determination that the appellant herein lacked standing to object to the warrantless search. Since the decision in Jones v United States, 362 US 257 (1960), the concept of standing has been the subject of an abundance of litigation.[3] In *Jones*, the Court's reasoning follows two avenues. First, the Court appears to remove one charged with a "possessory-type" offense from the horns of the dilemma faced in a situation where objecting to the introduction of evidence by admitting ownership or possession would also be admitting the major element necessary for conviction of the crime.[4] Thus, in regard to possessory-type crimes the first *Jones* concept would appear to support the position that standing can be achieved without

---

[2] The Court of Military Review stated in its decision:

We are satisfied that the use of the military vehicle in this case by appellant and his confederate was a wrongful appropriation because the vehicle was diverted to their private purposes. *See* U. S. v Greenfeather, 13 USCMA 151, 32 CMR 151 (1962). Thus, appellant was without standing to object to the search of said vehicle. *See* U. S. v Aloyian, 16 USCMA 333, 36 CMR 489 (1966).

[3] Jones was convicted for violation of Federal narcotics laws, 26 USC § 4704 (a) ; 21 USC § 174. Both statutory provisions under which he was prosecuted permit conviction upon proof of his possession of narcotics. Jones had the key to and use of an apartment belonging to Evans. Although Jones was not found to be an "invitee or guest.'" under Fed R Crim P 41(e), he was found to have standing to contest the lawfulness of the issuance of a warrant to search. 362 US at 259.

[4] See Jones v United States, 362 US at 262–263.

demonstration of any sort of interest in the premises searched or the property seized. This interpretation of the first aspect of the *Jones* decision, and some variations of it, have found favor in certain lower Federal courts. See Glisson v United States, 406 F2d 423 (5th Cir 1969) ; Cotton v United States, 371 F2d 385 (9th Cir 1967) ; Simpson v United States, 346 F2d 291 (10th Cir 1965). More specifically, these cases brought under the Dyer Act, 18 USC § 2312, confer standing upon a thief who stole the motor vehicle that was searched.

Such a rather automatic and easy to understand rule would undoubtedly be most utilitarian. But its viability in all cases where possessory crimes are involved becomes questionable after examining the second avenue taken by the Court in resolving the question presented in Jones v United States, supra. The Court, abandoning the reasoning of earlier cases which required a showing of ownership, possession, or a substantial possessory interest in property in order to gain standing, extended standing to Jones who was "legitimately on [the] premises" where the drugs were found. 362 US at 267. The relationship, if any, between the two avenues taken in *Jones* tend to darken the way leading to the real thrust of the decision.[5]

As the writer understands the *Jones* rationale, the decision cannot be read to extend standing to a trespasser on the premises searched even though he is charged with a possessory crime. Although it has been suggested by legal scholars that standing be extended to anyone whom law enforcement officials intend to procure evidence against at the time of the search,[6] and granting that purpose of the exclusionary rule to be a means to deter police from misconduct, I am not now prepared to extend the rule to that point.

If I am correct in my view that a trespasser on real property cannot have standing, it is extremely difficult to believe that a trespasser in a motor vehicle can have standing.[7]

In the case under review, keeping in mind that appellant was a passenger in the vehicle searched, there is absolutely nothing of record to indicate that his *presence* in the vehicle was a trespass.[8] Moreover, the testimony of the Government's witnesses establish that the search of the vehicle was directed toward both Simmons and Jenkins, the driver. Therefore, it must be clearly stated that my decision herein is not premised on an inspection theory since at the minimum the appellant was suspected of criminal

---

[5] Further, obscuring the current impact of the *Jones* decision is Simmons v United States, 390 US 377 (1968). In *Simmons*, the Court held that testimony given by defendant in a pretrial motion to establish standing and suppress evidence cannot be used as a part of the Government's case in chief against the defendant. It follows that the logic of *Simmons* tends to prevent the dilemma faced by one accused of a possessory crime, since he can establish his relationship to the property without facing his admission at the trial. However, we view the *Jones* decision substantially undisturbed by any subsequent Supreme Court decisions.

[6] See White and Greenspan, *Standing to Object to Search and Seizure*, 118 U Pa L Rev 333 (1970). But see Alderman v United States, 394 US 165 (1969).

[7] Being mindful of certain differences in Dyer Act cases where possession of a stolen vehicle *itself* is a crucial element of proof, we offer no conclusions concerning such cases. However, in the case before us, unlike the Dyer Act cases mentioned hereinabove, the search is made by agents of the lawful owner. We doubt that the extended rules of standing upon which those case are bottomed would give a thief of a motor vehicle standing to object to a search by its lawful owner, or by the police at the owner's request.

[8] In fact, the allied papers from the Article 32 investigation in appellant's case contain a DA Form 2400 which establishes that Specialist Jenkins had properly signed the vehicle out of the motor pool at 10:35 a.m. on August 3, 1971. There is no evidence of record which would indicate his use of the vehicle was restricted for a specific purpose.

activity and the search was only made because of that suspicion.

The Court of Military Review held that the appellant had wrongfully appropriated the vehicle. I do not believe the evidence sufficient to support that conclusion. Suspicion cannot properly sustain a conviction of wrongful appropriation. United States v Prott, 20 USCMA 350, 43 CMR 190 (1971). Secondly, Simmons, who did not procure the vehicle, was a passenger. In United States v Smith, 9 USCMA 317, 26 CMR 97 (1958), the Court indicated that a passenger would not be guilty of wrongful appropriation for accepting a ride in an automobile even if he knew it to be stolen unless it is proven that the passenger was a principal or an aider and abettor in the crime. Finally, there is no evidence that Simmons had any specific criminal intent to commit the crime of wrongful appropriation as is required by Article 121, UCMJ, 10 USC § 921, and case law.[9] See United States v Keleher, 14 USCMA 125, 33 CMR 337 (1963); United States v Roark, 12 USCMA 478, 31 CMR 64 (1961); United States v Bridges, 12 USCMA 96, 30 CMR 96 (1961).

■ Simmons' *presence* as a passenger appears from the record to have been legitimate. Combining the fact that the appellant was charged with a possessory crime and the fact that his *presence* as a passenger in the vehicle was not shown to be other than legitimate, the first *Jones* concept (alleged possession of contrabrand creates standing without requiring avowal of ownership) as well as the second thrust of that decision (legitimacy of presence) leads me to disagree with the Court of Military Review that Simmons lacked standing to object to the search because of a wrongful appropriation of the vehicle.

II

The circumstances surrounding any search determine the reasonableness of it. In Katz v United States, 389 US 347 (1971), the Supreme Court held that electronic eavesdropping even without physical penetration constituted an illegal search. In so holding the Court said "[w]herever a man may be, he is entitled to know that he will remain free from unreasonable searches and seizures." 389 US at 359. This decision irrefutably identified the nature of Fourth Amendment rights as personal.[10] Notwithstanding the Katz rationale that the right is personal, it does not follow that the right to protection from unreasonable search and seizure may be asserted absolutely to prevent one's statements either oral or written (or other fruits of such a search) from being used against him. In United States v White, 401 US 745, 752 (1971), the Court said:

Our problem, in terms of the principles announced in *Katz*, is what expectations of privacy are constitutionally "justifiable"—what expectations the Fourth Amendment will protect in absence of a warrant.

■ Hence, the fact that the Fourth Amendment right is personal is not talismanic. What must be determined is whether appellant's expectation of privacy is constitutionally justifiable. In other words the crucial issue, there-

---

[9] The only information adduced at trial relating to appellant's presence in the vehicle came from his sworn testimony. When asked what he was doing on the afternoon in question (August 3, 1971), he replied: "Well, I was sleeping at first, and then Spec 5 Jenkins came by and woke me up. . . . Then I got in the jeep with him, and he told me we were going outside the gate to get a piece of boom-boom."

[10] As was stated in United States v Ross, 13 USCMA 432, 435, 32 CMR 432, 435 (1963):

The Fourth Amendment to the United States Constitution protects *all* persons from "unreasonable searches and seizures." In applying the protection of the Amendment to specific situations involving persons subject to military law, military courts have been guided by the decisions of the Federal civilian courts. See United States v DeLeo, 5 USCMA 148, 17 CMR 148 [1954]; United States v Doyle, 1 USCMA 545, 4 CMR 137 [1952]. (Emphasis supplied.)

fore, is whether, in light of all the circumstances, the gas can of the military vehicle was a place where freedom from governmental intrusion should have been reasonably expected. I believe that the gasoline can attached to the vehicle, the property of the Government, was not made available to appellant for his personal use so as to provide him an expectation of privacy from governmental intrusion so that he has standing to object to its search by Government law enforcement officers.[11] Generally, a gasoline can attached to a military vehicle has but one purpose: to store and transport gasoline for use in the case of an emergency. The storing of personal property is manifestly unrelated to any proper function associated with a gasoline can attached to a military vehicle. The record is void of any circumstances peculiar to the appellant's presence in or use of the vehicle or the can which clothed him with a special expectation of privacy in the gasoline can.

Although I have commented on the legal ownership of the gasoline can, my decision does not backslide to past property oriented legalisms as necessary conditions to a finding of standing, but as I see it Government ownership of a military vehicle and the can, implements used in the performance of the Army's mission, is an important consideration in the determination of what right of privacy has been extended and what right to intrude has been retained.

Clearly, then, a critical determination in assessing a soldier's expectation of privacy as constitutionally protected is the extent to which the Government, either expressly or by reasonable implication, has retained the right to enter its property. When dealing with government clothing and equipment issued to the individual soldier for his personal use, the constitutional right to privacy in the property granted is nearly complete. The right to entry retained by the Government

is the power to inspect such property to insure the safety and security of a unit or to determine the soldier's readiness properly to perform his duties.[12]

At the other end of the spectrum lies other Government property which may be issued to one or more persons, e.g., a large crew-served weapon. These items are characterized by their non-personal nature and the Government has retained a right of entry. Under such circumstances, no one can reasonably expect a right of privacy in such Government property or to have the personal property cached therein free from intrusion by the Government.

I need not precisely draw the line today, but somewhere between these two extremes lie items, issued to or used by individuals, in which the Government has retained only some right of entry, thus affording the individual soldier a less than absolute right to privacy. Under the facts of this case the vehicle issued to appellant's companion is property in which the transient user could not reasonably expect total privacy. It is conceivable that under certain circumstances there may be certain rights of privacy extending to a serviceman in a military vehicle and its attachments, but such is not the case before us. It is clear to us that Simmons could not have reasonably expected privacy in the gasoline can. Without more, the discovery of contraband in the gasoline can of a military 1/4-ton truck is insufficient evidence of the offense of wrongful possession of such contraband on the part of the driver or passengers in the vehicle. Because such a gasoline can has not been reserved for their private use, there is no legal relationship between them and the gasoline can as would authorize a presumption that the occupants of the vehicle had possession of the contents of the gasoline can. No such quandry exists in this case, however, because the occupants of the vehicle were in fact seen under circumstances, stopping along the

---

[11] See Mancusi v DeForte, 392 US 364 (1968).

[12] See United States v Grace, 19 USCMA 409, 42 CMR 11 (1970).

road, going to the rear of the vehicle, and one man handling the gasoline can in the presence of the other, which warrant the inference that they were knowledgeable about the contents of the gasoline can in question.

Accordingly, I affirm the decision of the Court of Military Review.

DARDEN, Chief Judge (concurring in the result):

For the reasons set forth in my separate opinion in United States v Poundstone, 22 USCMA 277, 46 CMR 277 (1973), I agree with the conclusion of the principal opinion that the search of the Government vehicle in this case was reasonable.

I am unable to agree that the accused had any right of privacy in the vehicle that would confer on him standing to object to its search. The vehicle was property of the United States intended for military use and was in no way similar to a locker or living area in which an accused might reasonably expect to have his property secured against examination. In this respect, the vehicle is similar to the Government desk that we held to be lawfully searched without probable cause in United States v Weshenfelder, 20 USCMA 416, 43 CMR 256 (1971). See also United States v Collins, 349 F2d 863 (2d Cir 1965).

While appellate defense counsel attempt to distinguish this case from *Weshenfelder* on the basis that the search there was for Government property, see United States v Blok, 188 F2d 1019 (DC Cir 1951), I do not consider the distinction to be of importance. In Richardson v Zuppann, 81 F Supp, 809 (MD Pa 1949), the court upheld as reasonable a search of the accused's Government office which disclosed evidence consisting of other than Government property. And, in United States v Ebeling, 146 F2d 254, 257 (2d Cir 1944), the court stated that "It would seem . . . that the employer who was in possession of the premises was the only one who could object" to a search of a desk belonging to the employer but assigned to the defendant.

The vehicle in this case was a Government vehicle assigned for official use only. Cf. 31 USC § 638(a). The Government retained control over the vehicle and that control was not lost by its assignment to an official driver. That a casual passenger may gain the right of privacy in it seems so at odds with the Government's ownership, control, and responsibility for its property that I cannot agree such a person has any standing to prevent the Government's agent from searching its property without a warrant. United States v Weshenfelder, supra.

Accordingly, I join in affirming the decision of the Court of Military Review.

QUINN, Judge (concurring in the result):

I conclur in the result. See my opinion in United States v Poundstone, 22 USCMA 277, 46 CMR 277 (1973) and the opinion of the Court in United States v Weshenfelder, 20 USCMA 416, 43 CMR 256 (1971).